IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF | **UNDER SEAL** |
| PREMISES KNOWN AND DESCRIBED AS, AND INCLUDING ANY CLOSED CONTAINERS/ITEMS CONTAINED THEREIN, | |
| (1) MADISON DORMITORY, ROOM 307 AT THE FBI ACADEMY, QUANTICO, VIRGINIA 22135, | (1) No. 1:21-SW-755 |
| (2) LOCKER NUMBER 298, THIRD FLOOR, BUILDING 5, AT THE FBI ACADEMY, QUANTICO, VIRGINIA 22135, | (2) No. 1:21-SW-756 |
| (3) LOCKER NUMBER 708, MEN'S LOCKER ROOM, GYM AREA, AT THE FBI ACADEMY, QUANTICO, VIRGINIA, 22135, AND | (3) No. 1:21-SW-757 |
| (4) STORAGE SHELF USED BY SETH MARKIN, FIRST FLOOR, BUILDING 9, AT THE FBI ACADEMY, QUANTICO, VIRGINIA, 22135, | (4) No. 1:21-SW-758 |
| FOR THE APPLE IPHONE XS MAX ASSIGNED CALL NUMBER 914-329-7877 | |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT**

I, Claire Canty, Special Agent, Federal Bureau of Investigation, being first duly sworn,

hereby depose and state as follows:

USAO_SDNY_02_000000903

# I. Introduction

## A. Affiant

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since approximately December 2020. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am currently assigned to an FBI squad in the FBI's New York Field Office that investigates securities fraud and other white-collar offenses, including insider trading. During the course of my duties, I have received training about and participated in the execution of search warrants, including search warrants for the seizure and search of cellphones, and the review and analysis of both physical and electronic evidence. Through my training, education, and experience, I have become familiar with the manner in which securities frauds are perpetrated.

2.      I make this Affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search (a) the dormitory room of SETH MARKIN, located in the Madison Dormitory, Room 307 at the FBI Academy, Quantico, Virginia 22135 (the "Dormitory Room"), (b) the locker assigned to SETH MARKIN, identified as Locker Number 298, located on the third floor of Building 5 at the FBI Academy, Quantico, Virginia 22135 (the "Building 5 Locker"), (c) the locker assigned to SETH MARKIN, identified as Locker Number 708, located in the Men's Locker Room in the Gym Area at the FBI Academy, Quantico, Virginia 22135 (the "Gym Locker"), and (d) any storage shelf used by SETH MARKIN to store his belongings on the first floor of Building 9 at the FBI Academy, Quantico, Virginia 22135 (the "Building 9 Shelf"), along with any personal effects and cellphones within the Dormitory Room,

2

Building 5 Locker, Gym Locker, and/or Building 9 Shelf for an Apple iPhone XS Max assigned the call number 914-███████ (the "Subject Device") as described in Attachments A-1, A-2, A-3, and A-4; and to search the Subject Device for the items and information contained on it, as described in Attachment B. As described in further detail below, the Subject Device is used by SETH MARKIN, who is a Target Subject of this investigation.

3.     This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of electronic devices in criminal activity and the forensic analysis of electronically stored information ("ESI"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**B.  Property to Be Searched**

4.     The property to be searched is (a) the dormitory room of SETH MARKIN, located in the Madison Dormitory, Room 307 at the FBI Academy, Quantico, Virginia 22135, the Dormitory Room, (b) the locker assigned to SETH MARKIN, identified as Locker Number 298, located on the third floor of Building 5 at the FBI Academy, Quantico, Virginia 22135, the Building 5 Locker, (c) the locker assigned to SETH MARKIN, identified as Locker Number 708, located in the Men's Locker Room in the Gym Area at the FBI Academy, Quantico, Virginia 22135, the Gym Locker, and (d) any storage shelf used by SETH MARKIN to store his belongings on the first floor of Building 9 at the FBI Academy, Quantico, Virginia 22135, the Building 9 Shelf, along with any personal effects and cellphones within the Dormitory Room, Building 5

3

Locker, Gym Locker, and/or Building 9 Shelf for an Apple iPhone XS Max assigned the call number 914-███████, the Subject Device. SETH MARKIN was hired to be a Special Agent with the FBI on or about August 9, 2021 and began his training in or about August 2021. SETH MARKIN is currently undergoing new agent training at the FBI's Training Academy in Quantico, Virginia, which is in the Eastern District of Virginia.

5.     During his training at Quantico, SETH MARKIN resides in Room 307 of the Madison Dormitory (the "Dormitory Room"), which he shares with one other FBI new agent trainee.[1] On October 27, 2021, the Honorable Ivan D. Davis authorized a warrant for the search of the Dormitory Room and SETH MARKIN's effects and cellphones, seizure of the Subject Device, and a forensic examination of the Subject Device for the purpose of identifying electronically stored data or other evidence, fruits, or instrumentalities of violations of criminal law identified as the "Subject Offenses," and which match the Subject Offenses described in paragraph 12, below (the "October 27 Warrant"). A copy of the October 27 Warrant and the Affidavit submitted in connection with it, which were ordered to be sealed, is attached hereto as Exhibit A.

6.     On October 28, 2021, FBI agents attempted to execute the October 27 Warrant covertly while SETH MARKIN was engaged in a training exercise and away from the Dormitory Room, but they were unable to locate the Subject Device in the Dormitory Room. Based on my conversations with an agent, who spoke to a supervisor of trainees, including SETH MARKIN, I have learned that, at the end of the training session that SETH MARKIN attended while agents

---

[1] The Dormitory Room shares a conjoining bathroom with two other FBI new agent trainees who occupy the room adjacent to the Dormitory Room.

USAO_SDNY_02_000000906

were attempting to execute the October 27 Warrant, all trainees were instructed to display any cellphones in their possession, and SETH MARKIN did not display any cellphones.

7.    Based on my training, experience, and participation in this investigation, including my training at the FBI Academy in Quantico, Virginia, I know that FBI new agent trainees frequently store electronic devices in lockers or storage shelves, or in bags or containers within lockers or storage shelves, including the storage shelves on the first floor of Building 9 at the FBI Academy, as an alternative to storing electronic devices in their dormitory rooms. Therefore, on October 28, 2021, it is possible that SETH MARKIN (a) had the Subject Device in his pocket or on his person but chose not to reveal it, or (b) stored the Subject Device in one of his assigned lockers – the Building 5 Locker or the Gym Locker – or in a storage shelf on the first floor of Building 9. If this Court authorizes the requested Warrant, FBI personnel will conduct surveillance of SETH MARKIN in connection with the execution of the Warrant in order to determine where SETH MARKIN stores any of his belongings, including whether he stores his belongings in any storage shelf on the first floor of Building 9, to be identified as the Building 9 Shelf. The search will be conducted by checking the most probable location first. The search will be terminated once the Subject Device is confirmed to have been located.

8.    Accordingly, the applied-for warrant would authorize (i) the search of the (a) Dormitory Room, (b) Building 5 Locker, (c) Gym Locker, and/or (d) Building 9 Shelf, along with any personal effects and cellphones within the Dormitory Room, Building 5 Locker, Gym Locker, and/or Building 9 Shelf for an Apple iPhone XS Max assigned the call number 914-███████, the Subject Device, the seizure of the Subject Device, as described in Attachments A-1, A-2, A-3, and A-4, and (ii) the forensic examination of the Subject Device, for the purpose of identifying

5

electronically stored data or other evidence, fruits, or instrumentalities of the commission of the Subject Offenses, as particularly described in Attachment B.

## C. The Subject Device

9.      The Subject Device is particularly described as an Apple iPhone XS Max assigned the call number 914-████ (the "████ Call Number"). Based on my review of records provided by T-Mobile, I have learned that the call number 914-████ is subscribed to "Steven Markin," who, as described in further detail below, is SETH MARKIN's father. Based on my review of brokerage account records from Charles Schwab, Robinhood, and APEX for accounts in the name of SETH MARKIN, I have learned that SETH MARKIN lists the ████ Call Number and the email address ████████ as his contact information for those accounts. Based on my review of records provided by Google, I have learned that ████████ is subscribed to in the name of SETH MARKIN, and that SETH MARKIN identified the ████ Call Number as his "Recovery SMS" and "Signin Phone Numbers" telephone number. In addition, based on my review of records from Apple for an Apple iCloud account in SETH MARKIN's name (the "SETH MARKIN iCloud Account"), for which the Apple ID is ████████ (*i.e.*, SETH MARKIN's email address), I have learned that, on approximately November 20, 2018, an Apple iPhone XS Max was registered to the SETH MARKIN iCloud Account and, from approximately September 7, 2021 through at least approximately September 24, 2021, the SETH MARKIN iCloud Account was accessed by an Apple iPhone XS Max. Based on the foregoing, and my training, experience, and participation in this investigation, I believe that the Subject Device is an Apple iPhone XS Max which is used by SETH MARKIN.

10.      Based on my training, experience, and research, I know that the Subject Device has capabilities that allow it to be used for, among other things, making wireless telephone calls; taking

6

and storing digital photos, videos, and notes; displaying and storing other digital media; sending and receiving emails, text messages, iMessages, and WhatsApp messages; GPS navigation; maintaining contact information and calendar entries as a personal data assistant; and downloading and using a variety of electronic applications, including applications that provide encrypted platforms for electronic communications and applications that manage financial banking and brokerage accounts.

11.    On or about October 20, 2021, the Honorable Robert W. Lehrburger, United States Magistrate Judge for the Southern District of New York, entered a warrant and order for cellphone location information for the Subject Device (the "October 20 Warrant and Order"). Based on cellphone location information provided by T-Mobile pursuant to the October 20 Warrant and Order, I have learned that the Subject Device is located at the FBI Academy, Quantico, Virginia 22135, which is in the Eastern District of Virginia.

**D.  The Subject Offenses**

12.    For the reasons detailed below, I believe that there is probable cause to believe that the Subject Device contains evidence, fruits, and instrumentalities of violations of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5 (insider trading securities fraud); 15 U.S.C. §§ 78n(e) and 78ff, and 17 C.F.R. § 240.14e-3 (tender offer fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1348 (insider trading securities fraud); and aiding and abetting and conspiring to commit these offenses in violation of 18 U.S.C. §§ 2 (aiding and abetting), 371 (conspiracy), and 1349 (conspiracy) (the "Subject Offenses").

USAO_SDNY_02_000000909

## II. Probable Cause

### A. Probable Cause Regarding Subjects' Commission of the Subject Offenses

13. As set forth below, the FBI is investigating an insider trading scheme in securities of Pandion Therapeutics ("Pandion"), a clinical-stage biotechnology company, the shares of which were publicly traded on the Nasdaq stock market until it was acquired, in or about April 2021, pursuant to a tender offer, by a subsidiary of Merck & Co. ("Merck"), a publicly traded pharmaceutical company.

14. From my review of a public press release issued by Merck and Pandion at approximately 6:45 a.m. on February 25, 2021 (the "Merck-Pandion Announcement"), I have learned that Merck's proposed purchase of Pandion pursuant to a tender offer was first made public on February 25, 2021. Under the terms of the tender offer, Merck agreed to pay $60 dollars for each share of Pandion common stock, a substantial premium above the previous market price of Pandion shares. A multinational law firm based in Washington, D.C. ("Law Firm-1") acted as Merck's legal advisor in connection with the acquisition.

15. From publicly available historical stock market prices for Pandion stock, I have learned that between on or about Monday, January 4, 2021 and Wednesday, February 24, 2021, the price of a share of Pandion common stock never exceeded approximately $27.19, and for much of that time traded at substantially lower prices. The price of Pandion stock jumped from a close of approximately $25.63 per share on Wednesday, February 24, 2021 to a close of approximately $59.81 on Thursday, February 25, the day of the Merck-Pandion Announcement. This represented a more than approximately 133% jump in Pandion's stock price.

16. █████████████████████ is a corporate associate at Law Firm-1's Washington, D.C. office who worked on Merck's acquisition of Pandion. Based on my review of

USAO_SDNY_02_000000910

subscriber records from AT&T for a cellphone with the call number 610-███, I have learned that it is subscribed to in the name ████████ In addition, based on my review of records from social media, email, and mobile payment service accounts in ████ name or used by ████, which list 610-███████ as contact information for ██████, I have learned that ████ uses a cellphone with the call number 610███████ (the "███Cellphone").

17. SETH MARKIN previously worked as a program specialist for the U.S. Department of State and as a logistics compliance analyst at a global communications company, and lived in Falls Church, Virginia, which is near Washington, D.C. SETH MARKIN was hired to be a Special Agent with the FBI and began his training in or about August 2021. SETH MARKIN is currently undergoing new agent training at the FBI's Training Academy in Quantico, Virginia. As described in further detail below, SETH MARKIN and ██████ were closely associated in January and February 2021. As described in paragraph 9, above, based on my review of records from email, iCloud, and financial brokerage accounts in SETH MARKIN's name or used by SETH MARKIN, which list Subject Device-1 as contact information for SETH MARKIN, I have learned that SETH MARKIN uses Subject Device-1.

18. BRANDON WONG is a systems analyst at an education company and currently lives in New York City, New York. As described in further detail below, BRANDON WONG and SETH MARKIN are close associates. Based on my review of subscriber records from T-Mobile for a cellphone with the call number 917-███████, I have learned that it is subscribed to in the name of "Empower Ideas Corp" and contains an "MSISDN Name" of "Brandon." Based on my review of records from social media, email, and financial brokerage accounts in BRANDON WONG's name, which list 917-███████ as contact information for BRANDON

9

WONG, I have learned that BRANDON WONG uses a cellphone with the call number 917-███ (the "Brandon Wong Cellphone").

19.     As described in greater detail below, information and records I have obtained during the course of this investigation, including telephone and brokerage account records and records provided by the U.S. Securities and Exchange Commission (the "SEC"), indicate that there is probable cause to believe that SETH MARKIN obtained material non-public information ("MNPI") about Merck's acquisition of Pandion directly or indirectly from ███, and provided that MNPI to several of his friends, associates, and/or family members, who purchased Pandion stock in February 2021, in the period leading up to the Merck-Pandion Announcement, reaping substantial profits.

20.     Also as described in greater detail below, telephone and brokerage account records indicate that there is probable cause to believe that BRANDON WONG obtained MNPI about Merck's acquisition of Pandion directly or indirectly from SETH MARKIN, and provided the MNPI to friends, associates, and/or family members, who also purchased Pandion stock in February 2021, the period leading up to the Merck-Pandion Announcement, reaping substantial profits.

21.     From my review of a letter dated April 1, 2021 from Law Firm-1, on behalf of Merck, to the Financial Industry Regulatory Authority ("FINRA") (the "Merck Response"), and the exhibits to this letter, I have learned that, following the Merck-Pandion Announcement, FINRA conducted an investigation into possible insider trading in Pandion stock in connection with Merck's tender offer.  In the Merck Response, Merck provided information to FINRA regarding

USAO_SDNY_02_000000912

the chronology of Merck's acquisition of Pandion,[2] and the date or approximate date on which Merck personnel as well as personnel at the outside advisors and service providers Merck used in connection with the transaction first became aware of the potential transaction, including the following:

a. On January 27, 2021, representatives of Merck met with representatives of Pandion to discuss a potential business combination between Merck and Pandion.

b. ▬▬▬ is an associate at Law Firm-1. According to the Merck Response, "the date or approximate date" on which ▬▬▬ "first became involved" with the transaction or her "date of first knowledge" was January 31, 2021, which was a Sunday.

c. On February 5, 2021, Merck engaged an investment bank for services in anticipation of a potential business combination between Merck and Pandion.

d. On February 9, 2021, Merck engaged PwC as an advisor in anticipation of a potential business combination between Merck and Pandion. That same day, Merck provided to Pandion an exclusivity agreement providing for an initial exclusivity period ending on February 19, 2021 followed by an automatic 10-day extension if, at the end of the initial exclusivity period, Merck was working in good faith toward finalizing the proposed transaction. Pandion and Merck entered into the exclusivity agreement on February 9, 2021. Later that evening, Law Firm-1, Merck's legal advisor, provided Pandion's legal advisor with an initial draft of the Merger Agreement prepared by Law Firm-1, which contemplated tender and support agreements from all

---

[2] The Merck Response states that it was being provided in response to FINRA's "letter of inquiry, dated March 4, 2021, requesting information from Merck in connection with [FINRA's] review of trading in Pandion Therapeutics, Inc. ('Pandion')'s common stock surrounding the February 25, 2021 announcement (the 'Corporate Disclosure') that Merck would acquire Pandion, through a subsidiary, for $60.00 per share in cash (the 'Transaction')."

USAO_SDNY_02_000000913

directors and officers of Pandion and their respective affiliates and retention agreements with unidentified key employees.

e. On February 9, 2021, Merck and its legal and financial advisors obtained access from Pandion and its advisors to additional diligence materials through a virtual data room to enable Merck and its representatives to perform their confirmatory due diligence investigation of Pandion. In addition to a review of the virtual data room, Merck and its advisors subsequently participated in calls with senior management and representatives of Pandion as part of Merck's due diligence investigation. During the confirmatory due diligence process, Merck indicated that completion of site audits of two of Pandion's contract manufacturing vendors would be important to Merck's ability to proceed with a transaction, and the parties worked to enter into confidentiality agreements with such vendors and schedule these audits with third parties as promptly as possible.

f. On February 13, 2021, Merck and Pandion amended a confidential disclosure agreement ("CDA") to include a possible business combination and imposing mutual confidentiality obligations on Pandion with respect to information disclosed by Merck under the CDA.

g. Between February 9 and February 15, 2021, Pandion's legal advisor and Law Firm-1 conducted a number of conference calls and exchanged drafts of the parties' Merger Agreement, the form of Tender and Support Agreement, the confidential disclosure schedule and other transaction documents. Among other items, the parties negotiated the percentage of the outstanding shares of common stock that would be subject to Tender and Support Agreements to be sought from Pandion shareholders, the conditions to Merck's obligations to complete the transaction, and the obligations of Merck to extend the tender offer in order to permit the satisfaction of offer conditions. On February 15, 2021, the parties resolved all outstanding material

USAO_SDNY_02_000000914

issues under the proposed merger agreement and other transaction documents. However, representatives of Merck also informed representatives of Pandion and its advisors that same day that Merck was not prepared to proceed with the transaction until after completion of site audits with two of Pandion's contract manufacturing vendors, which were anticipated to be completed on or about February 24, 2021.

h. On February 24, 2021, Merck completed its site audits of the two contract manufacturing vendors of Pandion and finalized its due diligence.

i. At approximately 10:45 p.m. Eastern time on February 24, 2021, Merck, its subsidiary, and Pandion executed and delivered the Merger Agreement.

j. On February 25, 2021 and prior to the start of trading on Nasdaq, Pandion and Merck issued a joint press release announcing the execution of the Merger Agreement and the forthcoming commencement of the Offer.

22. Based on my review of telephone toll records, I have learned that ▮▮▮ using the ▮▮▮ Cellphone, and SETH MARKIN, using the Subject Device, communicated with each other by telephone at least approximately 60 times between January 1, 2021 and February 28, 2021.[3] My review of records provided by Venmo, a mobile payment service, demonstrate that, from approximately January 2, 2021 through March 8, 2021, ▮▮▮ and SETH MARKIN frequently

---

[3] This does not include iMessages, which are messages sent using an instant messaging service developed by Apple that allows iPhone and other Apple device users to send text messages, images, videos, and documents, using end-to-end encryption so only the sender and recipient can read the messages. The iMessage platform uses wireless Internet, and not cellular service, such that communications between Apple devices using iMessage are not logged in cellular provider records for those devices. As described above, SETH MARKIN used the Subject Device, an Apple iPhone XS Max, to communicate with ▮▮▮▮▮▮ at the ▮▮▮Cellphone, which, based on my review of records provided by Apple, is an Apple iPhone 11 Pro that, like the Subject Device, has iMessaging capabilities.

13

sent money to each other, including in transactions labeled: "January parking" ($125"); "February parking 🙏 ❤️ " ($125); "Whole Foods" ($79.81); and "Toga party" ($10). In addition, based on my review of records reflecting Internet Protocol ("IP") addresses[4] for Internet accounts and electronic devices used by ███ and SETH MARKIN, I have learned that in January and February 2021, ███ and SETH MARKIN frequently used a common IP address that ███ more frequently used (the "███ Associated IP Address").[5] Based on the foregoing, and my training, experience, and participation in this investigation, it appears that ███ and SETH MARKIN shared a close association in January and February 2021.

     23.     Based on my review of telephone toll records and brokerage account records in the name of SETH MARKIN, I have learned that SETH MARKIN placed suspicious well-timed trades after ███ approximate "date of first knowledge," according to the Merck Response, of Merck's potential acquisition of Pandion. For example, I have learned the following:

     a.   On or about Monday, February 1, 2021, at approximately 3:30 p.m.,[6] ███, using the ███ Cellphone, called a telephone number associated with a teleconferencing platform used by Law Firm-1. ███ was connected to the call for approximately 66 minutes.

---

[4] Based on my training, experience, and participation in this investigation, I know that an IP address is a unique numerical label that is assigned to electronic devices that use the Internet, including Internet routers and information technology connected devices such as smartphones.

[5] Publicly available geolocation information for the ███ Associated IP Address identifies a latitude and longitude for its corresponding Internet router. This geolocation information has an accuracy radius of approximately five kilometers. ███ residence in January and February 2021 was located within one mile of the latitude and longitude (*i.e.*, within the five-kilometer accuracy radius) identified by publicly available geolocation information for the Internet router assigned the ███ Associated IP Address.

[6] All times are in Eastern time unless otherwise noted.

14

USAO_SDNY_02_000000916

b.  While ▮▮▮ was connected to the conference call, the Subject Device, which is used by SETH MARKIN, placed three telephone calls to telephone numbers associated with Law Firm-1 between 4:18 p.m. and 4:26 p.m.

c.  The next day, on or about Tuesday, February 2, from approximately 10:52 a.m. through 12:39 p.m., SETH MARKIN, who had not previously owned or traded in Pandion in any currently known brokerage accounts in his name, began placing orders for shares of Pandion using online brokerage accounts in his name ("Brokerage Account-1"[7] and "Brokerage Account-2").  In total, SETH MARKIN placed orders for 368 shares of Pandion on February 2, 2021.  Based on my review of IP address records from Brokerage Account-1 and Brokerage Account-2, I know that SETH MARKIN used the ▮▮▮ Associated IP Address during the time period of this trading activity.

d.  On February 3, 2021, before the Nasdaq market opened, a deposit of $1,500 was made into Brokerage Account-2.  The same day, SETH MARKIN placed orders for a total of 58 shares of Pandion using Brokerage Account-1, Brokerage Account-2, and another online brokerage account in his name ("Brokerage Account-3").  Based on my review of IP address records from Brokerage Account-1, I know that SETH MARKIN used the ▮▮▮ Associated IP Address during the time period of this trading activity.

e.  On February 4, 2021, SETH MARKIN placed orders for a total of 252 shares of Pandion using Brokerage Account-1, Brokerage Account-2, and Brokerage Account-3.

f.  On February 5, 2021, before the Nasdaq market opened, a deposit of $1,500 was made into Brokerage Account-2.  The same day, between approximately 10:53 a.m. and 2:30

---

[7] As is referenced in this Affidavit, Brokerage Account-1 refers to two brokerage accounts at the same brokerage firm, both in SETH MARKIN's name, through which SETH MARKIN traded shares of Pandion.

USAO_SDNY_02_000000917

p.m., SETH MARKIN placed orders for 145 shares of Pandion using Brokerage Account-1 and Brokerage Account-2. Also on February 5, 2021, SETH MARKIN, using the Subject Device, called ▇▇▇ at the ▇▇ Cellphone, at approximately 4:45 p.m., and the two were connected for approximately 6 seconds. Moments later, at approximately 4:47 p.m., ▇▇▇, using the ▇▇ Cellphone, called SETH MARKIN, at the Subject Device, and the two were connected for approximately 38 seconds.

g. On February 6, 2021, SETH MARKIN, using the Subject Device, called ▇▇▇, at the ▇▇Cellphone, at 11:41 a.m. and the two were connected for approximately 2 minutes and 24 seconds. The same day, SETH MARKIN, using the Subject Device, called ▇▇▇, at the ▇▇ Cellphone, again at 12:42 p.m., connecting for approximately 36 seconds.

h. On February 8, 2021, SETH MARKIN purchased 28 shares of Pandion using Brokerage Account-2.

i. From approximately February 9 through February 15, 2021, SETH MARKIN, using the Subject Device, and ▇▇▇, using the ▇▇Cellphone, exchanged multiple phone calls. During this time period, as described in paragraph 21.g., above, Pandion's legal advisor and Law Firm-1 conducted a number of conference calls and exchanged drafts of the Merger Agreement, the form of Tender and Support Agreement, the confidential disclosure schedule and other transaction documents.

j. As described in paragraph 21.g., above, on February 15, 2021, Pandion and Merck resolved all outstanding material issues under the proposed merger agreement and other transaction documents. That same day, ▇▇▇, using the▇▇ Cellphone, called SETH MARKIN, using the Subject Device, at 5:47 p.m., and the two were connected for approximately one minute and 34 seconds. Later, at approximately 6:08 p.m., SETH MARKIN, using the Subject Device,

16

called ███, using the ███Cellphone, and the two were connected for approximately 11 seconds. Nasdaq was closed on February 15, 2021, a Monday, in observation of President's Day.

k. The next day, at approximately 2:33 p.m. Tuesday, February 16, 2021, SETH MARKIN placed orders to purchase 16 shares of Pandion using Brokerage Account-1. Based on my review of IP address records from Brokerage Account-1, I know that SETH MARKIN used the ███ Associated IP Address during the time period of this trading activity.

l. On February 18, 2021, ███, using the ███Cellphone, called SETH MARKIN, at the Subject Device, at 9:47 p.m., and the two were connected for approximately 21 minutes and 37 seconds.

m. The next day, February 19, 2021, before the Nasdaq market opened, a deposit of $1,500 was made into Brokerage Account-2. At approximately 10:40 a.m. the same day, ███, using the ███ Cellphone, called SETH MARKIN, at the Subject Device, and the two were connected for approximately three minutes and 52 seconds. At approximately 11:40 a.m. and 12:25 p.m., SETH MARKIN placed orders to purchase 43 shares of Pandion using Brokerage Account-2.

n. On February 22, 2021, at approximately 12:11 p.m., ███, using the ███ Cellphone, called SETH MARKIN, at the Subject Device, and the two were connected for approximately four seconds. That same day, at approximately 4:17 p.m., SETH MARKIN, using the Subject Device, called ███, at the ███Cellphone, and the two were connected for approximately one minute and 28 seconds.

o. The next day, February 23, 2021, from approximately 10:34 a.m. through 11:19 a.m., SETH MARKIN placed approximately 12 orders to purchase at total of 1,360 shares of Pandion using Brokerage Account-1.

17

p.  On February 24, 2021, SETH MARKIN, using the Subject Device, and ████,
using the ████ Cellphone, placed multiple telephone calls to each other, including a call at
approximately 6:03 p.m. that lasted approximately two minutes and 45 seconds.

q.  The next day, February 25, 2021, as described in paragraph 14, above, Merck
and Pandion jointly announced Merck's proposed purchase of Pandion pursuant to a tender offer
at approximately 6:45 a.m.  Beginning early in the day on February 25, SETH MARKIN placed
multiple orders to sell a total of approximately 1,589 shares of Pandion held across Brokerage
Account-1, Brokerage Account-2, and Brokerage Account-3.  Based on my review of IP address
records from Brokerage Account-1 and Brokerage Account-2, SETH MARKIN used the ████
Associated IP Address during the time period of this trading activity.

r.  On February 25, 2021, at approximately 4:39 p.m., SETH MARKIN, using the
Subject Device, called ████, at the ████ Cellphone, and the two were connected for
approximately two minutes.

s.  From approximately March 9, 2021 through March 17, 2021, SETH MARKIN
placed orders to sell all of his remaining shares of Pandion.

t.  In total, SETH MARKIN obtained approximately $80,000 in profits from his
trading in Pandion.

24.  From my review of records from brokerage accounts in the name of or otherwise
controlled by SETH MARKIN's friends, associates, and/or family members, I have learned that
several of these individuals, who had not previously owned or traded in Pandion using any
currently known brokerage accounts in their names, purchased Pandion shares in February 2021,
in the period leading up to the Merck-Pandion Announcement, reaping substantial profits.  From
my review of telephone records for these individuals, I have learned that in and around the period

18

of these well-timed trades, certain of these individuals were in telephone contact with SETH MARKIN, using the Subject Device. Some of this trading and communication activity is described below:

a. Based on my review of telephone toll records, I have learned that PHILIP MARKIN is an associate of SETH MARKIN's who, based on their last names, may also be a family member. On or about February 14, 2021, which was a Sunday, at approximately 2:20 p.m., a telephone used by PHILIP MARKIN[8] called SETH MARKIN, at the Subject Device, and the two were connected for approximately three minutes and 10 seconds. The next day, February 15, 2021, was a federal holiday during which Nasdaq was closed. On February 16, 2021, at approximately 5:46 a.m., PHILIP MARKIN placed orders to purchase 114 shares of Pandion in a brokerage account in his name. Those orders were replaced or expired. Later that day, beginning at approximately 9:33 a.m., PHILIP MARKIN placed orders to purchase approximately 50 to 78 shares of Pandion multiple times, all of which orders were also replaced or expired. At approximately 2:14 p.m., PHILIP MARKIN successfully placed an order to purchase 50 shares of Pandion. Again, at approximately 3:59 p.m., PHILIP MARKIN placed an order to purchase 70 shares of Pandion. The following day, February 17, 2021, PHILIP MARKIN attempted to purchase Pandion shares multiple times, and successfully placed an order for 170 shares of Pandion at approximately 10:03 a.m. From approximately February 18 through February 24, PHILIP

---

[8] Based on my review of brokerage account records for an account in the name of PHILIP MARKIN, I have learned that PHILIP MARKIN listed a telephone number ending in ▓▓▓ (the "Philip Markin Cellphone") as the "Daytime Phone Number" associated with his brokerage account and ▓▓▓▓▓▓▓▓▓▓▓▓▓" as his regularly used email address. Based on my review of records from the email provider for the email account ▓▓▓▓▓▓▓▓▓▓ I have learned that PHILIP MARKIN identified the same telephone number ending in -5083, the Philip Markin Cellphone, to associate with his email account as his "Recovery SMS" and "Signin Phone Numbers." The 2:20 p.m. telephone call referenced in paragraph 24.a. reflects a communication between the Philip Markin Cellphone and the Subject Device.

USAO_SDNY_02_000000921

MARKIN again attempted to purchase shares of Pandion on multiple occasions, and successfully purchased 155 shares of Pandion on February 24, 2021, the day before the Merck-Pandion Announcement. On February 25, 2021, after the Merck-Pandion Announcement, PHILIP MARKIN sold all of his shares of Pandion. In total, PHILIP MARKIN realized approximately $16,000 in profits from his Pandion trades.

      b. Based on my review of information provided by SETH MARKIN in connection with his employment at the FBI, I have learned that STEVEN MARKIN is SETH MARKIN's father. On February 9, 2021, at approximately 7:44 p.m., a telephone with the call number ending in -9514 that is associated with STEVEN MARKIN (the "█████ Telephone")[9] called SETH MARKIN, at the Subject Device, and the two were connected for approximately 14 minutes and 14 seconds. On February 10, 2021, at approximately 4:24 a.m., STEVEN MARKIN, using a cellphone with the call number 914-█████ (the "Steven Markin Cellphone")[10] sent a text message to SETH MARKIN, at the Subject Device. On February 11, 2021, at approximately 9:44 a.m., STEVEN MARKIN, who had not previously owned or traded in Pandion in any currently known brokerage accounts in his name, placed an order to purchase approximately 150 shares of Pandion. On February 25, 2021, at approximately 8:39 a.m. – after the Merck-Pandion

---

[9] Based on my review of subscriber records for the ███ Telephone, I have learned that the ███ Telephone is subscribed to in the name of "Steven Markin."

[10] Based on my review of subscriber records for the Steven Markin Cellphone, I have learned that the Steven Markin Cellphone is subscribed to in the name of "Steven Markin." Based on my review of records from Google, I have learned that the Google account for email address ██████████████ is subscribed to in the name of "Steven Markin" and lists, as its recovery SMS phone number, the Steven Markin Cellphone. Based on my review of records from TD Ameritrade, I have learned that, on or about September 18, 2019, STEVEN MARKIN, using ██████████, sent an email to an employee of TD Ameritrade, in which STEVEN MARKIN signed the email "Steven Markin [/] ██████████ (mobile)"; that mobile number is the Steven Markin Cellphone. Accordingly, I believe that STEVEN MARKIN uses the Steven Markin Cellphone.

USAO_SDNY_02_000000922

Announcement – SETH MARKIN, using the Subject Device sent a text message to STEVEN MARKIN at the Steven Markin Cellphone. That same day, at approximately 9:30 a.m., STEVEN MARKIN placed an order to sell all of his Pandion shares. In total, STEVEN MARKIN realized approximately $5,000 in profits from his Pandion trades.

25. In addition to the individuals identified in paragraph 20, based on my review of telephone toll records, records of brokerage accounts, and records provided by a mobile payment service for an account in the name of SETH MARKIN, I have learned that BRANDON WONG is another associate of SETH MARKIN's who also purchased Pandion shares in February 2021, in the period leading up to the Merck-Pandion Announcement, reaping substantial profits. For example, I have learned the following:

a. Prior to on or about January 31, 2021, BRANDON WONG, using the Brandon Wong Cellphone, and SETH MARKIN, using the Subject Device, were in frequent telephone communication. For example, from approximately November 1, 2020 through January 30, 2021, BRANDON WONG, using the Brandon Wong Cellphone, and SETH MARKIN, using the Subject Device, were in telephone contact more than 700 times.

b. Beginning on or around January 31, 2021, ███████ approximate "date of first knowledge" or when ██████ "first became involved" in the potential transaction (according to the Merck Response, as described in paragraph 21.b., above), through on or about February 24, 2021, the day before the Merck-Pandion Announcement, there are no toll records of calls or text messages between BRANDON WONG, using the Brandon Wong Cellphone, and SETH MARKIN, using the Subject Device. On February 25, at approximately 7:38 a.m., after the Merck-Pandion Announcement, BRANDON WONG, using the Brandon Wong Cellphone, called SETH MARKIN, at the Subject Device, but the two did not connect by telephone. Minutes later, at

21

approximately 7:56 a.m., SETH MARKIN, using the Subject Device, called BRANDON WONG, at the Brandon Wong Cellphone, and the two were connected for approximately one minute and 26 seconds.

c. Based on my review of records provided by WhatsApp, an instant messaging and voice-over-IP service that uses end-to-end encryption technology, I have learned that the telephone numbers associated with the Subject Device, used by SETH MARKIN, and the Brandon Wong Cellphone, used by BRANDON WONG, are each associated with WhatsApp accounts. Based on my training and experience, I believe that SETH MARKIN and BRANDON WONG may have used WhatsApp[11] to communicate with one another in the time period between January 31, 2021 – ███████approximate "date of first knowledge" or when █████ "first became involved" in the potential transaction (according to the Merck Response, as described in paragraph 21.b., above) – and February 24, 2021, the day before the Merck-Pandion Announcement.

d. From approximately February 10, 2021 through February 24, 2021, the day before the Merck-Pandion Announcement, BRANDON WONG placed multiple orders to purchase shares of Pandion using multiple online brokerage accounts in his name, purchasing a total of more than approximately 35,000 shares of Pandion. BRANDON WONG had not previously owned or traded in Pandion in any currently known brokerage accounts in his name.[12]

---

[11] It is also possible that SETH MARKIN used some other communication platform or platforms to communicate with BRANDON WONG.

[12] Based on information provided by the SEC, I have learned that SETH MARKIN and BRANDON WONG previously traded in (*i.e.*, purchased or sold) shares of other publicly traded companies, including in shares of so-called "small-cap companies" (*i.e.*, companies with a total market value, or market capitalization, of approximately $300 million to $2 billion) within the same week on multiple occasions. While I understand that the SEC's current information regarding SETH MARKIN's and BRANDON WONG's prior trades is not comprehensive, it appears that SETH MARKIN and BRANDON WONG coordinated trading in shares of publicly traded companies, including shares of small-cap companies like Pandion, on occasions prior to their trading in shares of Pandion, beginning on or about May 12, 2020. In addition, based on my

USAO_SDNY_02_000000924

e. As described in paragraph 25.b., above, BRANDON WONG, using the Brandon Wong Cellphone, and SETH MARKIN, using the Subject Device, communicated by telephone after the Merck-Pandion Announcement the morning of February 25, 2021, and before the Nasdaq market opened that day. Later that morning, BRANDON WONG sold the majority of his Pandion shares, realizing a profit of approximately $1,300,000.

f. As described in paragraph 25.b., above, BRANDON WONG, at the Brandon Wong Cellphone, and SETH MARKIN, at the Subject Device, did not communicate by traditional telephone contact between on or about January 31, 2021 – ███████ approximate "date of first knowledge" or when ██████ "first became involved" in the potential transaction (according to the Merck Response, as described in paragraph 21.b., above) – and February 24, 2021, the day before the Merck-Pandion Announcement. Beginning on February 25, 2021 through approximately the end of July 2021, BRANDON WONG, using the Brandon Wong Cellphone, and SETH MARKIN, using the Subject Device, resumed traditional telephone contact and were in communication more than approximately 20 times. In addition, Venmo, a mobile payment service, records for SETH MARKIN's account demonstrate that, from approximately April 4, 2021 through July 27, 2021, SETH MARKIN and BRANDON WONG frequently sent money to each other, including in transactions labeled: "Park Hyatt parking" ($75); "Tv" ($1,000); "Dear Hundrednaire, Pay me your dues!! Projector" ($746.49); "Put that towards the payment" ($0.01); "EMAX" ($2,000);

---

review of brokerage records for SETH MARKIN's and BRANDON WONG's brokerage accounts, I have learned that, following their trading in Pandion, SETH MARKIN and BRANDON WONG each traded in shares and/or options of Palantir Technologies Inc. within the same week. I have also learned that SETH MARKIN and BRANDON WONG had previously traded in shares and/or options of Palantir Technologies Inc., within the same week, prior to their trades in Pandion.

USAO_SDNY_02_000000925

"Uber split half wtf, smh, hold my hoops" ($7.65); "Brunch" ($17); "CSR" ($3,000); "🏝 Kauai" ($715.76); and "Gas" ($50.54).

26. From my review of records from brokerage accounts in the name of or otherwise controlled by BRANDON WONG's friends, associates, and/or family members, I have learned that several of these individuals, who had not previously owned or traded in Pandion in any currently known brokerage accounts in their names, purchased Pandion shares in February 2021, in the period leading up to the Merck-Pandion Announcement, reaping substantial profits. From my review of telephone records for these individuals, I have learned that in and around the period of these well-timed trades, certain of the individuals were in telephone contact with BRANDON WONG, using the Brandon Wong Cellphone. Some of this trading and communication activity is described below:

a. Based on telephone records and publicly available social media records, I have learned that BRANDON WONG is associated with an individual named BRIAN WONG who lived in Secaucus, New Jersey. On or about February 21, 2021, which was a Sunday, at approximately 8:46 p.m., BRANDON WONG, using the Brandon Wong Cellphone, called a telephone number associated with BRIAN WONG, [13] and the two were connected for approximately five minutes and 36 seconds. The next day, Monday, February 22, 2021, a brokerage account in the name of JANET THAI (the "Thai Brokerage Account"), BRIAN

---

[13] During this investigation, I have received social media and email provider records for accounts registered to BRIAN WONG. Based on my review of these records, I have learned that BRIAN WONG identified a telephone number ending in –2883 (the "Brian Wong Cellphone") to associate with each of his social media and email accounts, including as his "Recovery SMS" and "2-Step Verification" telephone number. The communications listed in paragraph 26.a., reflect communications between the Brian Wong Cellphone and the Brandon Wong Cellphone.

USAO_SDNY_02_000000926

WONG's wife,[14] placed four orders to purchase a total of 2,000 shares of Pandion.  JANET THAI had not previously owned or purchases shares of Pandion in any currently known brokerage accounts in her name.  Later the same day, February 22, 2021, BRANDON WONG, using the Brandon Wong Cellphone, exchanged approximately 18 text messages with BRIAN WONG, from approximately 12 p.m. through 7 p.m.  In addition, in the midst of these text messages, BRIAN WONG called BRANDON WONG, at the Brandon Wong Cellphone, at approximately 5:44 p.m., and the two were connected for approximately 17 seconds.  The following day, February 23, 2021, beginning at approximately 9:38 a.m. through approximately 2:22 p.m., the Thai Brokerage Account placed six orders to purchase a total of 4,000 shares of Pandion.  That evening, at approximately 7:48 p.m., BRANDON WONG, using the Brandon Wong Cellphone, called BRIAN WONG, and the two were connected for approximately 26 seconds.  At 7:49 p.m., BRIAN WONG called BRANDON WONG, at the Brandon Wong Cellphone, and the two were connected again for 26 seconds.  The following day, February 24, 2021 – the day before the Merck-Pandion Announcement – beginning at approximately 9:32 a.m. through approximately 12:28 p.m., the THAI Brokerage Account placed approximately 20 orders to purchase a total of 5,888 shares of Pandion.  In between these orders, at approximately 10:42 a.m., BRIAN WONG called BRANDON WONG, at the Brandon Wong Cellphone, and the two were connected for one minute and 16 seconds.  The next day, February 25, 2021, beginning at approximately 7:42 a.m. – after

---

[14] Based on my review of brokerage account records for the Thai Brokerage Account, I have learned that a senior financial consultant at the brokerage firm where that account is held placed the following comment into the profile for the account on or about February 24, 2018: "Client's husband (Brian Wong) makes all investing decisions."  In addition, based on my review of brokerage account records for another brokerage account in the name of JANET THAI, I have learned that, on September 11, 2009, BRIAN WONG submitted a trading authorization form in which he stated that he was Janet Thai's "fiancé."  Finally, brokerage account records for a brokerage account in the name of BRIAN WONG list the same address in Secaucus, New Jersey as is listed for the Thai Brokerage Account.

USAO_SDNY_02_000000927

the Merck-Pandion Announcement – the Thai Brokerage Account placed approximately 11 orders to sell a total of 11,888 shares of Pandion. In total, the Thai Brokerage Account realized approximately $400,000 in profits from Pandion trades.

b. Based on publicly available information gathered from a professional networking website on which BRANDON WONG and an individual named KOICHI TANAKA ("TANAKA") each maintain profiles, I have learned that BRANDON WONG and TANAKA are employed by the same education company. On or about February 21, 2021, which was a Sunday, at approximately 11:27 a.m., a telephone number used by TANAKA[15] called BRANDON WONG, at the Brandon Wong Cellphone, and the two were connected for approximately four seconds. The following day, February 22, 2021, beginning at approximately 1:19 p.m., TANAKA, who had not previously owned or purchased shares of Pandion in any currently known brokerage accounts in his name, placed multiple orders to purchase a total of four shares of Pandion using a brokerage account in his name. The next day, February 23, 2021, beginning at approximately 10:43 a.m., TANAKA placed approximately 6 orders to purchase a total of 16 shares of Pandion. On February 25, 2021 – after the Merck-Pandion Announcement – TANAKA sold all of his shares of Pandion, realizing a profit of approximately $600.

**B. Probable Cause Justifying Search of the Subject Device**

27. As described in paragraphs 22, 23, 24, 25, and 26, above, SETH MARKIN, ███, BRANDON WONG, and others appear to have frequently used telephone, text messaging, and

---

[15] During this investigation, I have received social media and email provider records for accounts registered to TANAKA. Based on my review of these records, I have learned that TANAKA identified a telephone number ending in ███ (the "Tanaka Cellphone") to associate with each of his social media and email accounts, including as his "Recovery SMS" and "2-Step Verification" telephone number. The 11:27 a.m. telephone call referenced in paragraph 26.b. reflects a communication between the TANAKA Cellphone and the Brandon Wong Cellphone.

USAO_SDNY_02_000000928

mobile phone conversations, including via the Subject Device, to communicate about, plan, prepare for, and engage in the commission of the Subject Offenses. In particular, as set forth above, SETH MARKIN, ███████, and BRANDON WONG have used the Subject Device to communicate via voice calls, in what appear to be conversations surrounding the commission of the Subject Offenses, with one another as well as with others. As described in paragraph 24.b., above, SETH MARKIN has received at least one text message and sent at least one text message in communications with STEVEN MARKIN surrounding STEVEN MARKIN's suspicious and well-timed Pandion trades. In addition, as described in paragraphs 22 and 25, above, it appears that SETH MARKIN used the Subject Device in connection with Venmo transactions with ███████ and BRANDON WONG.

28.     Based on my training, experience, and research, I know that the Subject Device has capabilities that allow it to be used for, among other things, making wireless telephone calls; taking and storing digital photos, videos, and notes; displaying and storing other digital media; sending and receiving emails, text messages, iMessages, and WhatsApp messages; GPS navigation; maintaining contact information and calendar entries as a personal data assistant; and downloading and using a variety of electronic applications, including applications that provide encrypted platforms for electronic communications and applications that manage financial banking and brokerage accounts.

29.     Further, based on my training, experience, research, and participation in this investigation, I know that, like individuals engaged in any other kind of activity, individuals who engage in insider trading, securities fraud, tender offer fraud, and wire fraud schemes commonly use cellphones to communicate with co-conspirators, including to convey MNPI, keep track of co-conspirators' contact information, keep a record of illegal transactions or criminal proceeds for

27

future reference, access financial accounts, transfer or dispose of criminal proceeds, and communicate regarding attempts to evade detection by law enforcement and/or regulatory agencies. As a result, they often store records relating to their illegal activity and to persons involved with them in that activity on electronic devices such as the Subject Device. Such records can include, for example, text, iMessage, or WhatsApp messages; logs of online "chats" with co-conspirators; email correspondence; contact information of co-conspirators, including telephone numbers, email addresses, and identifiers for instant messaging and social media accounts; financial and personal identification data, including bank account numbers, credit card numbers, and names, addresses, telephone numbers, and social security numbers; and/or records of transactions related to their illegal activity.

30.     Electronic files or remnants of such files can be recovered months or even years after they have been created or saved on an electronic device such as the Subject Device. Even when such files have been deleted, they can often be recovered, depending on how the hard drive has subsequently been used, months or years later with forensics tools. Thus, the ability to retrieve from information from the Subject Device depends less on when the information was first created or saved than on a particular user's device configuration, storage capacity, and usage habits.

31.     Based on the foregoing, I respectfully submit there is probable cause to believe that SETH MARKIN, ███, and BRANDON WONG are engaged in the commission of the Subject Offenses, and that evidence of the Subject Offenses is likely to be found in the ESI contained on the Subject Device.

## C.  Probable Cause Justifying Search of the Dormitory Room, Building 5 Locker, the Gym Locker, and the Building 9 Shelf for the Subject Device

32.     For the reasons set forth above, and based on my participation in this investigation, including my review of the communications and brokerage records described above, and my

28

training and experience, I believe it is likely that SETH MARKIN has possession, custody and control of the Subject Device, which contains evidence, fruits, and/or instrumentalities of the commission of the Subject Offenses.

33.     In particular, as set forth above, based on cellphone location information provided by T-Mobile pursuant to the October 20 Warrant and Order, I have learned that the Subject Device is currently located at the FBI Academy in Quantico, Virginia 22135. Based on my knowledge and experience in the FBI, and my conversations with FBI personnel located at the FBI's training facility in Quantico, Virginia, I know the following:

a.     Madison Dormitory, where the Dormitory Room is located, is a dormitory building which houses FBI personnel undergoing training at the FBI Training Academy. SETH MARKIN resides in Room Number 307 at Madison Dormitory, the Dormitory Room, which he shares with another FBI trainee

b.     Building 5, where the Building 5 Locker is located, contains classrooms where FBI agents receive training and instruction. FBI trainees often store their belongings in their assigned lockers in Building 5 while participating in training activities.

c.     The Men's Locker Room in the Gym Area, where the Gym Locker is located, is a room containing lockers in which FBI trainees often store their belongings while training at the Gym Area or while participating in other training activities.

d.     The first floor of Building 9, which is below the Cafeteria at the FBI Academy, contains multiple shelving units that FBI trainees often use to store their belongings while eating at the Cafeteria or participating in training activities.

34.     Based on my knowledge, experience, and conversations with FBI personnel at the FBI Training Academy, I know that it is typical for FBI trainees to be instructed not to bring

USAO_SDNY_02_000000931

electronic devices, including smart phones such as the Subject Device, to certain training sessions and activities, and that it is also typical for trainees to store such electronic devices in their dormitory rooms, lockers, or the shelves available on the first floor of Building 9 while participating in training activities. If this Court authorizes the search of the Dormitory Room, Building 5 Locker, Gym Locker, and/or Building 9 Shelf, along with any personal effects and cellphones within the Dormitory Room, Building 5 Locker, Gym Locker, and/or the Building 9 Shelf for the Subject Device, the search will be coordinated to take place during a training session for which all trainees were previously instructed that wireless devices (which would include cellphones such as the Subject Device) are prohibited from the training venue.

### D. Execution of the Search Warrant and Request for Delayed Notice

35.     The existence and scope of this ongoing criminal investigation are not publicly known. As a result, premature public disclosure of this Affidavit or the requested Warrant and Order could alert potential criminal targets that they are under investigation, causing them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. Specifically, the FBI's investigation is currently covert and in its early stages. ███████ SETH MARKIN, and BRANDON WONG are known to use electronic devices, communications, and applications, including in communications with each other and their friends, family members and/or associates and, with respect to SETH MARKIN and BRANDON WONG, in executing trades in online brokerage accounts that are relevant to the investigation. Thus, the evidence of this scheme may include electronic communications and other electronic evidence that is easily destroyed, deleted, encrypted, or otherwise concealed. Disclosure of this affidavit or the requested Warrant and Order could enable the subjects of the investigation to destroy or tamper with

USAO_SDNY_02_000000932

evidence, including electronically stored information that is easily tampered with. *See* 18 U.S.C. §§ 2705(b)(3) and 3103a.

36.     Although this application seeks authority to search the Dormitory Room, Building 5 Locker, Gym Locker, and Building 9 Shelf for the Subject Device, the Government intends to conduct the search of the Dormitory Room, Building 5 Locker, Gym Locker, and/or the Building 9 Shelf, and the search of the Subject Device covertly, to the extent practicable. To that end, as described in paragraph 7, above, FBI personnel will conduct surveillance of SETH MARKIN in connection with the execution of the Warrant in order to attempt to determine where SETH MARKIN stores any of his belongings, and the search will be conducted by checking the most probable location first (the Dormitory Room, Building 5 Locker, Gym Locker, and/or Building 9 Shelf) to search for the Subject Device at a time when it is confirmed that SETH MARKIN will be participating in a training session, and, upon locating the Subject Device, to create a forensic image of the Subject Device and return it to the Dormitory Room, Building 5 Locker, Gym Locker, or Building 9 Shelf before SETH MARKIN returns. The search will be terminated once the Subject Device is confirmed to be located.

37.     Because this planned approach involves only the temporary seizure of the Subject Device and its covert forensic imaging, and in light of the covert nature of the continuing criminal investigation and the adverse consequences expected in the event of premature notification, I request that the Court authorize law enforcement to delay notice of the search warrant to SETH MARKIN for a period of 30 days from the date of the execution of the Warrant. As described above, there is probable cause to believe that SETH MARKIN and others are involved in an insider trading scheme and are using electronic devices to effectuate this scheme. Therefore, disclosure of the requested search warrant would have a significant and negative impact on the continuing

USAO_SDNY_02_000000933

investigation and would severely jeopardize its effectiveness by encouraging subjects' flight from prosecution, engendering the destruction of evidence, and the tampering with or intimidation of potential witnesses. Accordingly, I submit that Title 18, United States Code, Sections 3103a(b)-(c) permit the Court to order that notice of the execution of the requested Warrant be delayed for 30 days from the date that the Warrant is executed, subject to the Government's opportunity to seek an additional delayed notice period upon a showing of good cause. *See* 18 U.S.C. §§ 3102a(b)-(c); Fed. R. Crim. P. 41(f)(3). Notice will be effectuated at the end of the delayed notice period by providing a copy of the Warrant and a receipt for the property taken to SETH MARKIN.

38. In addition, it is requested that FBI agents be authorized to access the Dormitory Room, Building 5 Locker, Gym Locker, and/or Building 9 Shelf (if needed) by surreptitious means, by forcible entry and on multiple occasions if necessary, in order to effect a search, including opening locked areas, containers, or other facilities, and inspecting, reproducing, altering, or seizing the Subject Device. It is further requested that in order to maintain the covert nature of the entry and search for the reasons articulated in paragraphs 35 through 38, above, agents be permitted to inspect, defeat, alter or delete any preexisting surveillance equipment.

## III. Procedures for Searching ESI

### A. Execution of Warrant for ESI

39. Federal Rule of Criminal Procedure a I (e)(2)(B) provides that a warrant to search for and seize properly "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information . . . for later review." Consistent with Rule 41, this application requests authorization to seize the Subject Device, create a forensic image of the Subject Device, return the Subject Device to the Dormitory Room, Building 5 Locker, the Gym

32

Locker, and/or the Building 9 Shelf, and transport the forensic image to an appropriate law enforcement facility for review. This is typically necessary for several reasons:

- First, the volume of data on cellphones is often impractical for law enforcement personnel to review in its entirety at the search location.

- Second, because ESI is particularly vulnerable to inadvertent or intentional modification or destruction, cellphones are ideally examined in a controlled environment, such as a law enforcement laboratory, where trained personnel, using specialized software, can make a forensic copy of the storage media that can be subsequently reviewed in a manner that does not change the underlying data.

- Third, there are so many types of cellphone hardware and software in use today that it can be impossible to bring to the search site all of the necessary technical manuals and specialized personnel and equipment potentially required to safely access the underlying computer data.

- Fourth, many factors can complicate and prolong recovery of data from a cellphone, including the increasingly common use of passwords, encryption, or other features or configurations designed to protect or conceal data on the computer, which often take considerable time and resources for forensic personnel to detect and resolve.

## B. Review of ESI

40. Following seizure of the Subject Device and creation of the forensic image and copies of the forensic image, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained on the Subject Device for information responsive to the warrant.

41. Based on the apparent coordinated trading activity between SETH MARKIN and BRANDON WONG, as described in paragraph 25 n.12, above, the materials to be searched, to the extent they are dated, will be limited to those sent, received, created, edited, or deleted on or after May 1, 2020.

33

USAO_SDNY_02_000000935

42.    In conducting this review, law enforcement may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses.  Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

- "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files;

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of search terms related to the subject matter of the investigation;[16] and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the Subject Device and its applications were used.  Keyword searches alone are typically inadequate to detect all information subject to seizure.  For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text.  Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.

43.    Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant.  Depending on the circumstances, however, law enforcement may need to conduct a complete review of all the ESI from the Subject Device to locate all data responsive to the warrant.

---

[16] Keyword searches alone are typically inadequate to detect all information subject to seizure. For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text.  Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.

USAO_SDNY_02_000000936

### C. Return of the Subject Device

44.     As described in paragraph 36, above, the Government plans to return the Subject Device to the Dormitory Room, Building 5 Locker, Gym Locker, and/or Building 9 Shelf immediately after creating a forensic image of it.  The Government is also requesting that notice, which would be effectuated by providing a copy of the Warrant and a receipt for the property taken to SETH MARKIN, be delayed, pursuant to Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 3103a(b), for a period not to exceed 30 days after the date of the Warrant's execution. Upon the expiration of the 30 days, the Government will provide SETH MARKIN with a copy of the Warrant and a receipt for the property taken.  Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

### IV.  Conclusion and Ancillary Provisions

45.     Based on the foregoing, I respectfully request the Court to issue a warrant to seize the Subject Device specified in Attachments A-1, A-2, A-3, and A-4 to this affidavit and to the Search and Seizure Warrant for the extraction of electronically stored information on the Subject Device, as described in Attachment B to this affidavit and to the Search and Seizure Warrant.

46.     In addition, for the reasons described in paragraphs 35 through 38, above, I respectfully request that the search warrant permit law enforcement agents to execute the search of the Dormitory Room, Building 5 Locker, Gym Locker, and/or Building 9 Shelf without prior notice to SETH MARKIN because such notice could result in the destruction of evidence contained on the Subject Device.  I also respectfully request, for the reasons set forth in paragraphs 35 through 38, above, that notice of the execution of the Warrant be delayed for 30 days from the

USAO_SDNY_02_000000937

date that the Warrant is executed, subject to the Government's opportunity to seek an additional

delayed notice period upon a showing of good cause. 18 U.S.C. §§ 3102a(b)-(c); Fed. R. Crim. P.

41(f)(3).

Respectfully submitted,

*Clari Canty*

Claire Canty
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone on November 3, 2021:

**Theresa C. Buchanan**   Digitally signed by Theresa C. Buchanan
Date: 2021.11.03 12:48:23 -04'00'

Hon. Theresa Carroll Buchanan
United States Magistrate Judge
Alexandria, Virginia

36

USAO_SDNY_02_000000938

# ATTACHMENT A-1

## I. Property to be Searched

The property to be searched is the dormitory room of SETH MARKIN, located in the Madison Dormitory, Room 307 at the FBI Academy, Quantico, Virginia 22135 (the "Dormitory Room"), along with any personal effects and cellphones within the Dormitory Room, at the time of the execution of this warrant (the "Subject Property"), for the purpose of locating an Apple iPhone XS Max assigned the call number 914██████ (the "Subject Device").

This warrant authorizes the search, seizure, and forensic examination of the Subject Device for the purpose of identifying the electronically stored information described in Attachment B.

## II. Device Subject to Search and Seizure

The device that is the subject of this search and seizure warrant, the Subject Device, is described as follows: an Apple iPhone XS Max assigned the call number 914██████.

## III. Delayed Notice

Notice of this warrant, which will be effectuated by providing a copy of the Warrant and a receipt for the property taken to SETH MARKIN, will be delayed, pursuant to Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 3103a(b), for a period not to exceed 30 days after the date of the warrant's execution. Upon the expiration of the 30 days, subject to the Government's opportunity to seek an additional delayed notice period upon a showing of good cause, the Government will provide SETH MARKIN with a copy of the warrant and a receipt for the property taken.

**ATTACHMENT A-2**

## I. Property to be Searched

The property to be searched is the locker assigned to SETH MARKIN, identified as Locker Number 298, located on the third floor of Building 5 at the FBI Academy, Quantico, Virginia 22135 (the "Building 5 Locker"), along with any personal effects and cellphones within the Building 5 Locker at the time of the execution of this warrant (the "Subject Property"), for the purpose of locating an Apple iPhone XS Max assigned the call number 914-████████ (the "Subject Device").

This warrant authorizes the search, seizure, and forensic examination of the Subject Device for the purpose of identifying the electronically stored information described in Attachment B.

## II. Device Subject to Search and Seizure

The device that is the subject of this search and seizure warrant, the Subject Device, is described as follows: an Apple iPhone XS Max assigned the call number 914-████████.

## III. Delayed Notice

Notice of this warrant, which will be effectuated by providing a copy of the Warrant and a receipt for the property taken to SETH MARKIN, will be delayed, pursuant to Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 3103a(b), for a period not to exceed 30 days after the date of the warrant's execution. Upon the expiration of the 30 days, subject to the Government's opportunity to seek an additional delayed notice period upon a showing of good cause, the Government will provide SETH MARKIN with a copy of the warrant and a receipt for the property taken.

USAO_SDNY_02_000000940

# ATTACHMENT A-3

## I. Property to be Searched

The property to be searched is the locker assigned to SETH MARKIN, identified as Locker Number 708, located in the Men's Locker Room in the Gym Area at the FBI Academy, Quantico, Virginia 22135 (the "Gym Locker"), along with any personal effects and cellphones within the Gym Locker at the time of the execution of this warrant (the "Subject Property"), for the purpose of locating an Apple iPhone XS Max assigned the call number 914-███ (the "Subject Device").

This warrant authorizes the search, seizure, and forensic examination of the Subject Device for the purpose of identifying the electronically stored information described in Attachment B.

## II. Device Subject to Search and Seizure

The device that is the subject of this search and seizure warrant, the Subject Device, is described as follows: an Apple iPhone XS Max assigned the call number 914-███.

## III. Delayed Notice

Notice of this warrant, which will be effectuated by providing a copy of the Warrant and a receipt for the property taken to SETH MARKIN, will be delayed, pursuant to Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 3103a(b), for a period not to exceed 30 days after the date of the warrant's execution. Upon the expiration of the 30 days, subject to the Government's opportunity to seek an additional delayed notice period upon a showing of good cause, the Government will provide SETH MARKIN with a copy of the warrant and a receipt for the property taken.

3

# ATTACHMENT A-4

## I. Property to be Searched

The property to be searched is any storage shelf used by SETH MARKIN to store his belongings on the first floor of Building 9 at the FBI Academy, Quantico, Virginia 22135 (the "Building 9 Shelf"), along with any personal effects and cellphones within the Building 9 Shelf at the time of the execution of this warrant (the "Subject Property"), for the purpose of locating an Apple iPhone XS Max assigned the call number 914-█████ (the "Subject Device").

This warrant authorizes the search, seizure, and forensic examination of the Subject Device for the purpose of identifying the electronically stored information described in Attachment B.

## II. Device Subject to Search and Seizure

The device that is the subject of this search and seizure warrant, the Subject Device, is described as follows: an Apple iPhone XS Max assigned the call number 914█████.

## III. Delayed Notice

Notice of this warrant, which will be effectuated by providing a copy of the Warrant and a receipt for the property taken to SETH MARKIN, will be delayed, pursuant to Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 3103a(b), for a period not to exceed 30 days after the date of the warrant's execution. Upon the expiration of the 30 days, subject to the Government's opportunity to seek an additional delayed notice period upon a showing of good cause, the Government will provide SETH MARKIN with a copy of the warrant and a receipt for the property taken.

4

USAO_SDNY_02_000000942

# ATTACHMENT B

## I. Review of ESI on the Subject Device

Following seizure of the Subject Device and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Subject Device for evidence, fruits, and instrumentalities of violations of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5 (insider trading securities fraud); 15 U.S.C. §§ 78n(e) and 78ff, and 17 C.F.R. § 240.14e-3 (tender offer fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1348 (insider trading securities fraud); and aiding and abetting and conspiring to commit these offenses in violation of 18 U.S.C. §§ 2 (aiding and abetting), 371 (conspiracy), and 1349 (conspiracy) (the "Subject Offenses") described as follows:

1. Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Device;

2. Evidence concerning the identity or location of, and communications with, individuals who traded in shares of Pandion Therapeutics ("Pandion") or had access to material non-public information ("MNPI") concerning Pandion;

3. Communications, including text, MMS (*i.e.*, multimedia messaging service), SMS (*i.e.*, short message service), WhatsApp or other application messages, and email messages (collectively, "electronic messages"), any attachments to those electronic messages, such as digital photographs and videos, and any associated information such as the phone number or email account from which the electronic message was sent, with ██████████, Brandon Wong, Philip

USAO_SDNY_02_000000943

Markin, Steven Markin, Brian Wong, Koichi Tanaka, or others acting on their behalf, related to the commission of the Subject Offenses;

4.     Evidence regarding the interests, efforts, or plans by Merck & Co. ("Merck") to purchase Pandion;

5.     Evidence relating to the conveyance of MNPI relating to the interests, efforts, or plans of Merck to acquire Pandion;

6.     Evidence relating to the trading in the shares or other securities of Pandion, as well as evidence of the ownership and control over brokerage accounts used to conduct such transactions;

7.     Evidence reflecting the state of mind of (i) individuals involved in trading in the shares or other securities of Pandion; and (ii) individuals possessing, or having access to, MNPI regarding the interests, efforts, or plans of Merck to acquire Pandion;

8.     Evidence relating to the relationship between and among Seth Markin, ███████, Brandon Wong, Philip Markin, Steven Markin, Brian Wong, Koichi Tanaka, and any individuals who possess or have access to MNPI regarding the interests, efforts, or plans of Merck to acquire Pandion;

9.     Evidence relating to any benefits conveyed to individuals possessing, or having access to, MNPI regarding the interests, effort, or plans of Merck to acquire Pandion, or evidence of any discussions or communications regarding the conveyance of such a benefit;

10.     Evidence of the commission of the Subject Offenses contained in any calendar or date book stored on the Subject Device;

11.     Evidence of the commission of the Subject Offenses contained in records, documents, programs, applications, or materials, or evidence of the absence of the same, showing

6

call log information, including all telephone numbers dialed from the Subject Device and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

12. Records, documents, programs, applications or materials, or evidence of the absence of the same, sufficient to show SMS text, MMS (*i.e.*, multimedia messaging service), SMS (*i.e.*, short message service), WhatsApp or other application messages, and email messages or other text or written communications sent to or received from the Subject Device which relate to the commission of the Subject Offenses;

13. Evidence of passwords or other information needed to access any user accounts;

14. Evidence of the receipt, transfer, disposition or location of funds raised through the commission of the Subject Offenses;

15. Evidence of the geographic location of the user(s) of the Subject Device, as well as other electronic devices used, including records of or information about Internet Protocol addresses used by the Subject Device;

16. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Subject Device;

17. Records of or information about the Subject Device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, which relate to the commission of the Subject Offenses;

18. Evidence of efforts to conceal the commission of the Subject Offenses and evade detection by law enforcement and/or regulatory agencies; and

7

USAO_SDNY_02_000000945

19.      Evidence relating to other devices or physical premises in which evidence of the commission of the Subject Offenses may be found.

The materials to be searched, to the extent they are dated, are limited to those sent, received, created, edited, or deleted on or after May 1, 2020.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discovery and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the Subject Device and its applications were used.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of

8

USAO_SDNY_02_000000946

information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from the Subject Device if necessary to evaluate its contents and to locate all data responsive to the warrant.

Additionally, review of the items described in this Attachment shall be conducted pursuant to established procedures designed to collect evidence in a manner reasonably designed to protect any attorney-client or other applicable privilege. When appropriate, the procedures shall include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

## II. Return of the Subject Device

The Government will return the Subject Device to the premises from which it was located immediately after creating a forensic image of it. Computer data from the forensic image of the Subject Device that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

## III. Delayed Notice

Notice of this warrant, which will be effectuated by providing a copy of the warrant and a receipt for the property taken to SETH MARKIN, will be delayed, pursuant to Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 3103a(b), for a period not to exceed 30 days after the date of the warrant's execution. Upon the expiration of the 30 days, subject to the Government's opportunity to seek an additional delayed notice period upon a showing of good cause, the

9

USAO_SDNY_02_000000947

Government will provide SETH MARKIN with a copy of the warrant and a receipt for the property taken.

USAO_SDNY_02_000000948

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>MADISON DORMITORY, ROOM 307 AT THE FBI<br>ACADEMY, QUANTICO, VIRGINIA 22135,<br>FOR THE APPLE IPHONE XS MAX ASSIGNED CALL<br>NUMBER 914-329-7877 | )<br>)<br>)<br>)<br>)<br>) | **UNDER SEAL**<br><br>Case No.1:21-SW-755 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Virginia_____
*(identify the person or describe the property to be searched and give its location)*:

MADISON DORMITORY, ROOM 307 AT THE FBI ACADEMY, QUANTICO, VIRGINIA 22135, FOR THE APPLE IPHONE XS MAX ASSIGNED CALL NUMBER 914-329-7877, as described in Attachment A-1.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____November 17, 2021_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Theresa Carroll Buchanan_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for __30__ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____11/03/2021 12:30 pm_____

Theresa C. Buchanan
Digitally signed by Theresa C. Buchanan
Date: 2021.11.03 12:48:01 -04'00'

*Judge's signature*

City and state:   _____Alexandria, Virginia_____       Hon. Theresa Carroll Buchanan, U.S. Magistrate Judge
*Printed name and title*

USAO_SDNY_02_000000894

| **Return** | | |
|---|---|---|
| Case No.:<br>1:21-SW-755 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A-1

## I. Property to be Searched

The property to be searched is the dormitory room of SETH MARKIN, located in the Madison Dormitory, Room 307 at the FBI Academy, Quantico, Virginia 22135 (the "Dormitory Room"), along with any personal effects and cellphones within the Dormitory Room, at the time of the execution of this warrant (the "Subject Property"), for the purpose of locating an Apple iPhone XS Max assigned the call number 914██████ (the "Subject Device").

This warrant authorizes the search, seizure, and forensic examination of the Subject Device for the purpose of identifying the electronically stored information described in Attachment B.

## II. Device Subject to Search and Seizure

The device that is the subject of this search and seizure warrant, the Subject Device, is described as follows: an Apple iPhone XS Max assigned the call number 914-██████.

## III. Delayed Notice

Notice of this warrant, which will be effectuated by providing a copy of the Warrant and a receipt for the property taken to SETH MARKIN, will be delayed, pursuant to Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 3103a(b), for a period not to exceed 30 days after the date of the warrant's execution. Upon the expiration of the 30 days, subject to the Government's opportunity to seek an additional delayed notice period upon a showing of good cause, the Government will provide SETH MARKIN with a copy of the warrant and a receipt for the property taken.

**ATTACHMENT B**

## I. Review of ESI on the Subject Device

Following seizure of the Subject Device and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Subject Device for evidence, fruits, and instrumentalities of violations of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5 (insider trading securities fraud); 15 U.S.C. §§ 78n(e) and 78ff, and 17 C.F.R. § 240.14e-3 (tender offer fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1348 (insider trading securities fraud); and aiding and abetting and conspiring to commit these offenses in violation of 18 U.S.C. §§ 2 (aiding and abetting), 371 (conspiracy), and 1349 (conspiracy) (the "Subject Offenses") described as follows:

1. Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Device;

2. Evidence concerning the identity or location of, and communications with, individuals who traded in shares of Pandion Therapeutics ("Pandion") or had access to material non-public information ("MNPI") concerning Pandion;

3. Communications, including text, MMS (*i.e.*, multimedia messaging service), SMS (*i.e.*, short message service), WhatsApp or other application messages, and email messages (collectively, "electronic messages"), any attachments to those electronic messages, such as digital photographs and videos, and any associated information such as the phone number or email account from which the electronic message was sent, with ███████, Brandon Wong, Philip

5

Markin, Steven Markin, Brian Wong, Koichi Tanaka, or others acting on their behalf, related to the commission of the Subject Offenses;

4.       Evidence regarding the interests, efforts, or plans by Merck & Co. ("Merck") to purchase Pandion;

5.       Evidence relating to the conveyance of MNPI relating to the interests, efforts, or plans of Merck to acquire Pandion;

6.       Evidence relating to the trading in the shares or other securities of Pandion, as well as evidence of the ownership and control over brokerage accounts used to conduct such transactions;

7.       Evidence reflecting the state of mind of (i) individuals involved in trading in the shares or other securities of Pandion; and (ii) individuals possessing, or having access to, MNPI regarding the interests, efforts, or plans of Merck to acquire Pandion;

8.       Evidence relating to the relationship between and among Seth Markin, ████████, Brandon Wong, Philip Markin, Steven Markin, Brian Wong, Koichi Tanaka, and any individuals who possess or have access to MNPI regarding the interests, efforts, or plans of Merck to acquire Pandion;

9.       Evidence relating to any benefits conveyed to individuals possessing, or having access to, MNPI regarding the interests, effort, or plans of Merck to acquire Pandion, or evidence of any discussions or communications regarding the conveyance of such a benefit;

10.     Evidence of the commission of the Subject Offenses contained in any calendar or date book stored on the Subject Device;

11.     Evidence of the commission of the Subject Offenses contained in records, documents, programs, applications, or materials, or evidence of the absence of the same, showing

6

USAO_SDNY_02_000000898

call log information, including all telephone numbers dialed from the Subject Device and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

12.     Records, documents, programs, applications or materials, or evidence of the absence of the same, sufficient to show SMS text, MMS (*i.e.*, multimedia messaging service), SMS (*i.e.*, short message service), WhatsApp or other application messages, and email messages or other text or written communications sent to or received from the Subject Device which relate to the commission of the Subject Offenses;

13.     Evidence of passwords or other information needed to access any user accounts;

14.     Evidence of the receipt, transfer, disposition or location of funds raised through the commission of the Subject Offenses;

15.     Evidence of the geographic location of the user(s) of the Subject Device, as well as other electronic devices used, including records of or information about Internet Protocol addresses used by the Subject Device;

16.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Subject Device;

17.     Records of or information about the Subject Device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, which relate to the commission of the Subject Offenses;

18.     Evidence of efforts to conceal the commission of the Subject Offenses and evade detection by law enforcement and/or regulatory agencies; and

7

USAO_SDNY_02_000000899

19.     Evidence relating to other devices or physical premises in which evidence of the commission of the Subject Offenses may be found.

The materials to be searched, to the extent they are dated, are limited to those sent, received, created, edited, or deleted on or after May 1, 2020.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discovery and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the Subject Device and its applications were used.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of

8

information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from the Subject Device if necessary to evaluate its contents and to locate all data responsive to the warrant.

Additionally, review of the items described in this Attachment shall be conducted pursuant to established procedures designed to collect evidence in a manner reasonably designed to protect any attorney-client or other applicable privilege. When appropriate, the procedures shall include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

## II. Return of the Subject Device

The Government will return the Subject Device to the premises from which it was located immediately after creating a forensic image of it. Computer data from the forensic image of the Subject Device that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

## III. Delayed Notice

Notice of this warrant, which will be effectuated by providing a copy of the warrant and a receipt for the property taken to SETH MARKIN, will be delayed, pursuant to Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 3103a(b), for a period not to exceed 30 days after the date of the warrant's execution. Upon the expiration of the 30 days, subject to the Government's opportunity to seek an additional delayed notice period upon a showing of good cause, the

Government will provide SETH MARKIN with a copy of the warrant and a receipt for the property taken.

USAO_SDNY_02_000000902