UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

Indictment No.: 22 CR 395 (ER)

v.

AFFIDAVIT OF
SETH MARKIN,   SETH MARKIN

Defendant.
-----------------------------------------------------------X

THE STATE OF PENNSYLVANIA )
                                    ) ss.:
BUCKS COUNTY                )

SETH MARKIN, being duly sworn deposes and says:

1. I am the defendant named in Indictment 22 CR 395 (ER). Accordingly, I am fully familiar with the facts circumstances set forth herein.

2. I make this Affidavit in support of the motion filed by my attorney to suppress statements made by me during an interview with FBI agents on November 18, 2021.

3. In this Affidavit, I recount, to the best of my recollection, relevant events that took place prior to the meeting with FBI agents on November 18, 2021; during the interrogation that took place on that date; and following the conclusion of the interview. Based upon these events, it was my belief that if I refused to participate, my refusal would be reported to my supervisors at the Academy and I would be fired as an FBI agent/trainee.

**Events Preceding My Meeting With The Agents**

4. In or about August of 2021, I began my employment as an FBI agent/trainee. Throughout the period from the commencement of training through the date of my interview

1

with FBI agents on November 18, 2021, I lived at the FBI Training Academy in Quantico, Virginia.

5. In or about October 2021, I took an examination entitled "Legal Two" on matters relating to my employment as an FBI agent. Shortly thereafter, I was informed that I had failed a portion of the examination. I was placed in a group of similarly situated trainees in order to study for a make-up examination regarding the material covered on the test. Within two weeks, I took the make-up examination. I believe that I passed the make-up test.

6. On or about November 17, 2021, I was contacted by one of my training supervisors. I was told that the next day, I should report, in uniform, to my supervisor's office prior to firearms training, which was my first scheduled activity of the following morning.

7. At approximately 6:00 a.m. on November 18, 2021, I went to the office of my supervisor as directed. My supervisor advised me that I must sign a document indicating that I had failed my first effort to complete the Legal Two examination. I was troubled by this in light of the fact that, in the interim, I had retaken the test and I believed that I had passed it. Nonetheless, I signed the document as directed by my supervisor. After doing so, my assistant supervisor escorted me to a nearby conference room. When I arrived, I was confronted with the two FBI agents who were involved in the insider trading investigation.

### My Meeting With FBI Agents on November 18, 2021

8. During the interrogation, I was told by one of the agents that they were involved in a criminal investigation of insider trading activity. I was told that I was a target of the investigation. I was told, in words or substance, that the FBI had obtained substantial evidence indicating that I was involved in insider trading, and that I, my parents, and other close family members, were likely to "go to jail" as a result of this evidence.

2

9. This description of the investigation, coupled with my earlier interaction with my supervisor, led me to believe that unless that I participated in the interview, I would be fired, based upon either my refusal to answer questions, on the basis of a pretext related to my performance as an FBI trainee, or some combination of both.

10. I was not given my *Miranda* warnings. Specifically, the agents did not advise me of my right to have counsel present during the interview.

11. Instead, I was immediately told to sign a copy of a form entitled "Warnings and Assurances to Employee Requested To Provide information On A Voluntary Basis." I was not advised, orally, of the contents of the form. Nor, was I given a right to review the form before deciding whether to participate in the interview. A copy of the form is annexed to this motion as Exhibit C.

12. The nature of the interrogation was such that I specifically recall asking the agents whether I should have an attorney with me during the questioning. In response, one of the agents stood up as if to leave. The other agent told me that he was not in a position to advise me as to whether or not it would be in my best interest to speak to an attorney. However, he told me that if I "cooperated" in their investigation, that fact, along with the information I supplied, would be provided to the United States Attorney's Office.

13. As the interrogation continued, the agents confronted me with text messages between me and an individual I allegedly tipped regarding the company that was the subject of the insider trading. The agents demanded that I explain the meaning of these messages.

14. Eventually, I responded that I "needed an attorney" before I would continue with the interview. At that point, the interview ended. A copy of the FBI 302 is annexed to this motion as Exhibit D.

15. On several occasions during the interview, I recall saying to the agents, in words or substance, that I assumed I was going to be fired. I also asked the agents, on more than one occasion, whether I should resign before I was fired. The agents did not respond to my comments beyond reminding me that they were questioning me as part of a criminal investigation.

16. At the end of the interrogation, I was again told to sign a copy of the warning form. A copy of this second form is annexed to this motion as Exhibit E. As the recorded time reveals, the interrogation took well over 2 ½ hours.

17. Notwithstanding the contents of the form that I signed, both at the beginning and at the end of the interview, I was under the clear impression that unless I not only participated in the interview, but explained to the satisfaction of the agents the "evidence" which they claimed to have amassed, I would be terminated as an FBI employee.

**Events Following The Interrogation**

18. When the interrogation concluded, I was escorted to another conference room by a group including the two FBI agents who had questioned me, as well as my supervisor, the assistant supervisor, and the FBI trainer.

19. There, I was served with documents which, when taken together, had the effect of terminating my employment as an FBI agent trainee.

20. The first document was a letter from the Acting Executive Assistant Director of the Human Resources Branch of the FBI. The letter was dated November 12, 2021 – six days prior to my meeting with the FBI agents. It informed me that the FBI was suspending my top secret security clearance effective upon the receipt of this letter. It indicated that the suspension was based on "security concerns" relating to the allegation that I had failed to disclose to the FBI

4

the "true nature" of my relationship with a foreign national, and failed to provide "full, frank, and truthful answers" in connection with a personnel security determination." A copy of the letter is annexed to this motion as Exhibit F.

21. At no time prior to my receipt of this letter was I informed that my security clearance was ever subject to question. At no time was I told the identity of the individual with whom I had made improper contact. At no time was I told what the nature of my improper contact was. And, at no time was I told the manner in which this contact violated security protocols.

22. At the same time, I was also provided with a letter dated November 16, 2021 – four days prior to my meeting with the FBI agents – from the Unit Chief of the Performance Appraisal Unit in the Human Resources Division. The letter advised me that I was suspended indefinitely from duty and pay effective upon receipt of the letter. According to the letter, the action was based upon the decision to suspend my top secret security clearance. A copy of the letter is annexed to this motion as Exhibit G.

23. Among the additional forms that I was required to sign was a dismissal form indicating that my dismissal was based upon the fact that my security clearance had been suspended. A copy of this document is annexed to this motion as Exhibit H.

24. Thereafter, my assistant supervisor and the FBI trainer escorted me to my dormitory and remained outside of room while I packed up my belongings. They then escorted me to my car. The two FBI agents, who said they were interviewing me as part of a criminal investigation that was separate from my employment as an FBI trainee, then entered their vehicle and followed me off the premises of the FBI Training Academy.

25. When I arrived at a gas station, one of the agents exited his car and, with his service weapon visible, stood behind my car while I filled my car with gas. After these two agents assured themselves that I would not return to the Quantico campus, they drove off. I drove to my parents' home in Pennsylvania and did not return to the FBI Academy.

_____
SETH MARKIN

Sworn to before me this
28th day of December 2022

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
MELISSA A SCHUSSLER - Notary Public
Bucks County
My Commission Expires September 22, 2026
Commission Number 1427304