

**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D.C. 20535-0001

November 12, 2021

Mr. Seth Markin
FBI Academy
1 Range Road
Quantico, VA. 22135

Dear Mr. Markin:

This letter is to inform you, as the Federal Bureau of Investigation (FBI) Security Programs Manager, I am suspending your Top Secret security clearance effective upon receipt of this letter. The suspension of your security clearance is based on security concerns related to Adjudicative Guideline B – Foreign Influence and Adjudicative Guideline E – Personal Conduct of the National Security Adjudicative Guidelines for Determining Eligibility for Access to Classified Information or Eligibility to Hold a Sensitive Position.

The Security Division learned you failed to provide or fully disclose to the FBI the true nature of your relationship with a foreign national, and failed to provide full, frank and truthful answers in connection with a personnel security determination. Your actions raise sufficient concerns about your judgment, trustworthiness, and reliability to warrant suspension of your security clearance pending further investigation.

The suspension of your clearance will continue until the FBI investigation of the underlying matter is completed. At that time, your clearance status will be re-evaluated, and you will be advised accordingly.

The suspension of an employee's access to classified information results in loss of access to controlled FBI space. Accordingly, while your clearance is suspended, you will not be allowed access to FBI space. In addition, you are reminded that while on suspension, you may not represent yourself as an FBI employee, and your authority to fulfill the duties and responsibilities of your position is also suspended.

The Human Resources Division will notify you of any changes to your leave status. Any questions regarding this matter should be directed to HQ-DIV11-AIU-SUPPORT@fbi.gov.

Sincerely,

Jennifer Leigh Moore
Acting Executive Assistant Director
Human Resources Branch

USAO_SDNY_03_000000031

Mr. Seth Markin

   Please sign and date the Acknowledgment of Receipt of this letter. Your signature does not indicate your agreement or disagreement with this action. Your failure to sign will not void the content of this letter.

Acknowledgment of Receipt:

_____          11/18/2021
Employee's Signature                                                        Date
srmarkin@gmail.com
Employee's Personal Email (for future contact)
_____
Employee's Personal Telephone Number (for future contact)

3

USAO_SDNY_03_000000032

Mr. Seth Markin

**Note to AD, Training Division:** You or your designee should present the attached letter and the enclosures: Leave Election Form, Standard Form-8, Notice to Federal Employee About Unemployment Insurance, the FD-331, "Special Agent Request to Engage in Outside Employment", and the Federal Employment Health Benefits sheet, to the employee. The employee should be made aware that the leave election form must be submitted to the Performance Appraisal Unit (PAU) by the date specified in the letter or the employee will be indefinitely suspended from the employee's position. **For record keeping purposes, please have the employee sign and date the Acknowledgment of Receipt, maintain a copy of the letter for your files, and email the entire letter to Management and Program Analyst (MAPA) Grace M. Francese of PAU.** If the employee refuses to sign the letter, please note on the letter, "Letter was presented to employee on (date), and employee refused to sign." Ensure the employee's supervisor receives a copy of this letter. **In addition to emailing the letter, please provide MAPA Grace M. Francese the name and contact information of your office's designated timekeeper for the employee's WebTA entries and provide a copy of this notes page to your Timekeeper.**

**Security/Administrative Actions:**
- The CSO or designee should execute the applicable debriefing forms and collect all appropriate FBI property from the employee.
- Once the employee has received the suspension/revocation package and the proposed indefinite suspension package, SecD will update the TS clearance status in Phoenix; and ensure the appropriate security alerts are placed in Phoenix and Signal Flags.
- Your administrative designee must contact the FFD Travel Card Unit to notify of the employee's suspension. To ensure that the travel card is suspended to reflect the employee's status, please email Karen Joyce-McMahon and Russell Bartholet.

**Leave Actions:** The Human Resources Division is the leave approval authority for Indefinitely Suspended employees; therefore, your office's designated timekeeper should contact PAU for guidance regarding the employee's WebTA entries. PAU will advise your office's designated timekeeper whether or not the employee decides to make the voluntary election to substitute their accrued available annual or sick leave in lieu of being indefinitely suspended within 14 days of receipt of the employee's acknowledgment letter. Please note the only type of leave authorized for indefinitely suspended employees is annual or sick leave, which is approved by HRD.

- Should the employee *elect* to take annual leave, the employee will receive an annual leave approval letter. Once the available annual leave hours are exhausted, the employee is placed in a Suspension status in WebTA and HR Exchange. (See "*HR Exchange Actions*" instructions below).

Mr. Seth Markin

- Should the employee *elect* to take sick leave or is later qualified and approved for the use of sick leave after electing to take annual leave, the employee will receive a sick leave approval letter outlining the dates for which the sick leave has been approved. Once the employee exhausts their available sick leave or they do not provide additional supporting documentation to continue the use of sick leave, they should be placed annual leave only if it has not been exhausted.
- Should the employee *elect not* to take annual leave and/or is not qualified and approved for sick leave, the employee is immediately placed in a Suspension status in both WebTA and HR Exchange (See "*HR Exchange Actions*" instructions below).

**HR Exchange Actions:** If the employee does not elect to take annual or sick leave or when the employee exhausts available leave, your office will be advised to immediately prepare the appropriate Personnel Action Request (PAR) in HR Exchange to effect the indefinite suspension action. MAPA Grace M. Francese of PAU will advise your office of the effective date of the indefinite suspension action. The "nature of action" code (452) (Suspension Indefinite) and the "authority code" (VHJ) 5 U.S.C. 75 Eq must be annotated on the PAR, with the remark: **Reason for suspension: "Suspension of Top Secret clearance and access to classified information."**

Should you have any questions or concerns regarding this matter, please contact MAPA Grace M. Francese, PAU, at (202) 323-0082.

# CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

AN AGREEMENT BETWEEN    Seth Markin    AND THE UNITED STATES

*(Name of Individual - Printed or typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 13526, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security; and unclassified information that meets the standards for classification and is in the process of a classification determination as provided in sections 1.1, 1.2, 1.3 and 1.4(e) of Executive Order 13526, or under any other Executive order or statute that requires protection for such information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of information or last granting me a security clearance that such disclosure is permitted. I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; or termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of sections 641, 793, 794, 798, *952 and 1924, title 18, United States Code; *the provisions of section 783(b}, title 50, United States Code; and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation of classified information not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law. I agree that I shall return all classified materials which have, or may come into my possession or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information. If I do not return such materials upon request, I understand that this may be a violation of sections 793 and/or 1924, title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10. These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

*(Continue on reverse.)*

NSN 7540-01-280-5499
Previous edition not usable.

**STANDARD FORM 312** (Rev. 7-2013)
Prescribed by ODNI
32 CFR PART 2001.80  E.O. 13526

USAO_SDNY_03_000000035

11. These restrictions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by Executive Order No. 13526 (75 Fed. Reg. 707), or any successor thereto section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); section 2302(b) (8) of title 5, United States Code, as amended by the Whistleblower Protection Act of 1989 (governing disclosures of illegality, waste, fraud , abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential Government agents); sections 7(c) and 8H of the Inspector General Act of 1978 (5 U.S.C. App.) (relating to disclosures to an inspector general, the inspectors general of the Intelligence Community. and Congress); section 103H(g)(3) of the National Security Act of 1947 (50 U.S.C. 403-3h(g)(3) (relating to disclosures to the inspector general of the Intelligence Community); sections 17(d)(5) and 17(e)(3) of the Central Intelligence Agency Act of 1949 (50 U.S.C. 403g(d)(5) and 403q(e)(3)) (relating to disclosures to the Inspector General of the Central Intelligence Agency and Congress); and the statutes which protect against disclosure that may compromise the national security, including sections 641, 793, 794, 798, *952 and 1924 of title 18, United States Code, and *section 4 (b) of the Subversive Activities Control Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions, and liabilities created by said Executive Order and listed statutes are incorporated into this agreement and are controlling.

12. I have read this Agreement carefully and my questions, if any, have been answered. I acknowledge that the briefing officer has made available to me the Executive Order and statutes referenced in this agreement and its implementing regulation (32 CFR Part 2001 , section 2001 .80(d)(2) ) so that I may read them at this time, if I so choose.

* NOT APPLICABLE TO NON-GOVERNMENT PERSONNEL SIGNING THIS AGREEMENT.

| SIGNATURE | DATE | SOCIAL SECURITY NUMBER (See Notice below) |
|---|---|---|
| [signed] | 08/04/2021 | 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 |

ORGANIZATION (IF CONTRACTOR, LICENSEE, GRANTEE OR AGENT, PROVIDE: NAME, ADDRESS, AND, IF APPLICABLE, FEDERAL SUPPLY CODE NUMBER) (Type or print)

| WITNESS | ACCEPTANCE |
|---|---|
| THE EXECUTION OF THIS AGREEMENT WAS WITNESSED BY THE UNDERSIGNED. | THE UNDERSIGNED ACCEPTED THIS AGREEMENT ON BEHALF OF THE UNITED STATES GOVERNMENT. |
| SIGNATURE: [signed] DATE: 08/04/2021 | SIGNATURE: [signed Ray] DATE: 8/4/21 |
| NAME AND ADDRESS (Type or print)<br>Benjamin Tyler Mathis<br>FBI HQ<br>935 Pennsylvania Ave., NW<br>Washington, DC 20535 | NAME AND ADDRESS (Type or print)<br>FBI Academy<br>Qt. VA. |

### SECURITY DEBRIEFING ACKNOWLEDGEMENT

I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information, and that I (have) ~~(have not) (strike out inappropriate word or words)~~ received a security debriefing.

| SIGNATURE OF EMPLOYEE | DATE |
|---|---|
| [signed] | 11/18/2021 |

| NAME OF WITNESS (Type or print) | SIGNATURE OF WITNESS |
|---|---|
| Raymond B Chancellor | [signed Ray] |

NOTICE: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Number (SSN) is Public Law 104-134 (April 26, 1996). Your SSN will be used to identify you precisely when it is necessary to certify that you have access to the information indicated above or to determine that your access to the information indicated has been terminated. Furnishing your Social Security Number, as well as other data, is voluntary, but failure to do so may delay or prevent you being granted access to classified information.

STANDARD FORM 312 BACK (Rev. 7-2013)

USAO_SDNY_03_000000036

# SENSITIVE INFORMATION NONDISCLOSURE AGREEMENT

An Agreement between ___Seth Markin___
and the Federal Bureau of Investigation (FBI) regarding the following activities:

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to sensitive information from FBI investigations as required to perform my duties. As used in this Agreement, sensitive information is marked or unmarked information, including, but not limited to, oral communications, the disclosure of which may compromise, jeopardize or subvert any investigation. Sensitive information also includes information relating to closed investigations, the disclosure of which might compromise, jeopardize or subvert other law enforcement activities or investigations. I understand and accept that by being granted access to this sensitive information, special confidence and trust shall be placed in me by the FBI.

2. I hereby acknowledge that I have received an indoctrination concerning the nature and protection of sensitive information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of sensitive information may cause irreparable damage to FBI investigations and that I will never divulge sensitive information to anyone unless (a) I have officially verified that the recipient has been properly authorized by the FBI to receive it; or (b) I have been given prior written notice of authorization from the FBI that such disclosure is permitted. I understand that if I am uncertain as to the sensitive nature or status of information, I am required to confirm from an authorized official that the information may be disclosed prior to disclosure of this information.

4. I have been advised that any breach of this Agreement may result in the termination of my relationship with the FBI. In addition, I have been advised that any unauthorized disclosure of information by me may constitute a violation or violations of United States criminal laws, including Title 18, United States Code, or may lead to criminal prosecution for obstruction of lawful government functions. I realize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I understand that all sensitive information to which I have access or may obtain access by signing this agreement is now and will remain the property of, or in the control of the FBI unless otherwise determined by an authorized official or final ruling in a court of law. I agree that I shall return all sensitive materials which have or may come into my possession, or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; or (b) upon the conclusion of my relationship with the FBI, whichever occurs first.

6. I understand that these restrictions are consistent with and do not supersede, conflict with, or otherwise alter my obligations, rights, or liabilities created by Executive Order No. 13526; Section 7211 of Title 5, U.S.C. (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act of 1989 (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the FBI Whistleblower Protection Act (5 U.S.C. 2303, 28 C.F.R. Part 27) (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential government agents); and the statutes which protect against disclosure that may compromise the national security, including Sections 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. 783(b)). The definitions, requirements, obligations, rights, sanctions, and liabilities created by said Executive Order and listed statutes are incorporated into this agreement and are controlling. I further understand, however, that any such information that is disclosed pursuant to applicable federal law continues to be subject to this agreement for all other purposes, and disclosure to the appropriate entities provided by federal law does not constitute public disclosure or declassification, if applicable, of such information.

7. These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or

safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

8. Unless and until I am released in writing by an authorized representative of the FBI, I understand that all conditions and obligations imposed upon me by the Agreement apply during the time I am granted access to the sensitive information and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this agreement. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation of sensitive information not consistent with the terms of this Agreement.

11. I have read this Agreement carefully and my questions, if any, have been answered.

Signature _____  Date 08/04/2021

Organization (if contractor, provide name and address):

The briefing and execution of this Agreement was witnessed by __Benjamin Tyler Mathis__
(Type or Print Name)

Signature _____  Date 08/04/2021

---

**SECURITY DEBRIEFING ACKNOWLEDGMENT**

I reaffirm that the provisions of the Federal criminal laws applicable to the safeguarding of sensitive information have been made available to me; that I have returned all sensitive information in my custody; that I will not communicate or transmit sensitive information to any unauthorized person or organization; that I will promptly report to the FBI any attempt by an unauthorized person to solicit sensitive information, and that I have received a debriefing regarding the security of sensitive information.

Signature _____  Date 11/18/2021

Name of Witness (Type or Print) __Raymond B Chancellor__

Signature of Witness _____  Date 11/18/21

USAO_SDNY_03_000000038