UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,                                    Indictment No.: 22 CR 395 (ER)


        v.


SETH MARKIN,

                        Defendant.

-------------------------------------------------------------X



**REPLY MEMORANDUM IN FURTHER SUPPORT OF SETH MARKIN'S**
**MOTION TO SUPPRESS EVIDENCE AND FOR OTHER RELIEF**






                                        SERCARZ & RIOPELLE, LLP
                                        950 Third Avenue, 31st Floor
                                        New York, New York 10022
                                        Telephone: 1-212-586-4900
                                        *Attorneys for Seth Markin*

# **TABLE OF CONTENTS**

I.      Statements Made By Markin To FBI Agents On November 18, 2021 Were Extracted By
        "Economic Coercion."  Accordingly, The Statements Must Be Suppressed. In The
        Alternative, A Hearing Should Be Held To Resolve Any Conflict Regarding The
        Underlying Facts. ........................................................................................................... 1

   A.   An Express Threat To Terminate Employment Is Not Required ...................................... 1

   B.   The Circumstances Surrounding The Interrogation Were Replete With Evidence Of
        Economic Coercion.......................................................................................................... 3

      1.   Markin Was Interrogated At His Workplace By Agents Of His Employer, And Was
           Provided With No Advance Notice Of The Nature Of The Interview ........................... 3

      2.   Markin Was Threatened With The Loss Of His Liberty, As Well As His Employment,
           Before Being Questioned ............................................................................................... 3

      3.   Immediately Thereafter, Markin Was Dismissed From His Employment...................... 4

      4.   The Government's Efforts To Distinguish This Case From *Garrity* And Its Progeny Are
           Unavailing..................................................................................................................... 4

   C.   Evidence Of Events That Occurred Both Before And After The Interrogation Are
        Relevant To Demonstrate Economic Coercion................................................................. 5

   D.   Count Thirty-One Of The Indictment Should Be Dismissed For Lack Of Venue.  In The
        Alternative, This Count Must Be Severed Pursuant to Fed.R.Crim.P. 14(a) .................... 7

II.     The Government Must Choose Among Three Sets Of Counts Alleging Fraud Which Are,
        Based Upon The Current Indictment, Multiplicitous ...................................................... 9

   A.   The Government Ignores The Content Of Its "Speaking Indictment," As Well As Our
        Due Process Concerns...................................................................................................... 9

   B.   The "Elements" Of Insider Trading Pursuant To The Three Sets Of Statutes Involved
        Here Are Fact Dependent, And Have Recently Been In Flux: The Saga Of *United States
        v. Blaszczak* ................................................................................................................... 10

III.    Conclusion ................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)........... 9

*Chambers v. State of Florida,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940) ........................ 5

*Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967)............................. 1, 5

*Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) ....................................... 1

*United States ex rel Annunziato v. Deegan,* 440 F.2d 304 (2d Cir. 1971).................................... 7

*United States ex rel Sanney v. Montaye,* 500 F.2d 411 (2d Cir. 1974)........................................ 2

*United States v. Bin Laden, et al.,* 146 F.Supp.2d 373 (S.D.N.Y 2001)................................... 7, 8

*United States v. Blaszczak,* 947 F.3d 19 (2019) )(Blaszczak I) .................................................. 11

*United States v. Blaszczak*, 56 F.4th 230 (2d Circuit 2022)(Blaszczak II) ................................. 12

*United States v. Cabrales,* 524 U.S. 1, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) ........................... 7

*United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).......................... 9

*United States v. Dove,* 884 F.3d 138  (2d Cir. 2018) .................................................................. 10

*United States v. Holmes,* 44 F.3d 1150  (2d Cir. 1995) ................................................................ 9

*United States v. Ji,* 2022 WL 595259 (E.D.N.Y. 2022) .............................................................. 10

*United States v. Johnson,* 131 F.3d 132, 1997 W.L. 792443 (2d Cir. 1997)................................ 4

*United States v. Mahaffy,* 2006 W.L. 2224518 (E.D.N.Y. 2006) ................................................. 8

*United States v. Roberts,* 660 F.3d 149 (2d Cir. 2011)............................................................ 2, 3

*United States v. Rodriguez-Moreno,* 526 U.S. 275, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999) ...... 7

*United States v. Saavedra*, 223 F.3d 85 (2d Cir. 2000) ............................................................... 7

*United States v. Stein,* 440 F.Supp.2d 315 (S.D.N.Y. 2006) ........................................................... 2

**Statutes**

U.S.S.G. § 2B1.1(c)(3)....................................................................................................... 8

**Other Authorities**

https://www.fbijobs.gov/eligibility#fbi-eligibility.......................................................... 5

**Rules**

Fed.R.Evid. 404(b)............................................................................................................ 6

I.      **Statements Made By Markin To FBI Agents On November 18, 2021 Were Extracted By "Economic Coercion."  Accordingly, The Statements Must Be Suppressed. In The Alternative, A Hearing Should Be Held To Resolve Any Conflict Regarding The Underlying Facts.**

In *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the United States Supreme Court held that, where police officers who were subject to investigation were given a choice either to incriminate themselves or to forfeit their jobs under a New Jersey statute which mandated the forfeiture of office and pension rights for officers who invoked their Fifth Amendment privilege, the resulting confessions were not voluntary and the Fourteenth Amendment prohibited their use in subsequent criminal proceedings.  As the Court stated:

> The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent.

*Id.* at 497.

In the effort to place the interrogation of Seth Markin (hereinafter "Markin") by FBI agents beyond the scope of *Garrity* and its progeny, the Government applies an unduly narrow definition of "economic coercion" and ignores salient facts that occurred before, during, and after Markin's encounter with his interrogators.

### A.  An Express Threat To Terminate Employment Is Not Required

In *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), the Supreme Court extended the principle beyond instances where the defendant was faced with a statute mandating the loss of employment, to other instances of economic coercion.  The Court held that the state could not compel incriminatory answers from independent contractors under the threat that unless they waived immunity, they would be disqualified from obtaining jobs from state agencies for a period of five years.

1

In commenting on this decision, the Second Circuit explained:

> The controlling factor is not the public or private status of the person from whom the information is sought but the fact that the state has involved itself in the use of a substantial economic threat to coerce a person into furnishing an incriminating statement. *United States ex rel Sanney v. Montaye,* 500 F.2d 411 (2d Cir. 1974).

In *United States v. Roberts,* 660 F.3d 149 (2d Cir. 2011), the Second Circuit noted that a "significant threat of economic harm" or "economic sanctions" – whatever the form – could violate a defendant's Fifth Amendment right against self-incrimination:

> The economic threat must 'reasonably appear' [ ] to have been of sufficiently appreciable size and substance to deprive the accused of his free choice to admit, to deny, or to refuse to answer.

*Roberts*, *supra* at 156.

And, in *United States v. Stein,* 440 F.Supp.2d 315 (S.D.N.Y. 2006)(Kaplan, J.), the District Court applied the concept of economic coercion to instances beyond those where the defendant's employment was placed at risk.

*Stein* involved an investigation of the accounting firm KPMG, the employer of the defendants in this case. Although KPMG maintained a practice of paying legal fees to employees sued or charged with crimes as a result of doing their jobs, the Government threatened to consider such payments as a factor weighing in favor of indicting the firm. As a result, KPMG changed its practice regarding legal fees and informed its employees that it would pay legal fees up to $400,000; but, only on condition that the employees cooperate with prosecutors. *Id.* at 318. In finding that statements obtained from employees under these circumstances were not voluntary, the Court stated:

> It no longer may be doubted that economic coercion to secure a waiver of the privilege against self-incrimination, where it is attributable to the Government,

2

violates the Fifth Amendment if the pressure is sufficient to 'deprive[ ], [ ] the accused of his free choice to admit, to deny or to refuse to answer.'

Id. at 326.

The test for the presence of economic coercion is based upon the "totality of the circumstances."  *See United States v. Roberts, supra,* at 156.

### B. The Circumstances Surrounding The Interrogation Were Replete With Evidence Of Economic Coercion

1. Markin Was Interrogated At His Workplace By Agents Of His Employer, And Was Provided With No Advance Notice Of The Nature Of The Interview

Markin was not contacted by the FBI and asked, in advance, to appear for an interview. Nor, was he issued a subpoena with a return date to provide information in the ongoing criminal investigation.  Instead, the night before the defendant was interrogated by agents of the FBI, he was notified by his supervisors at the FBI Training Academy that he must report to his immediate supervisor's office, in uniform, prior to his first scheduled activity of the following day.  However, he was not told that he would be interrogated as part of a criminal investigation.

At approximately 6:00 a.m., when Markin arrived at his supervisor's office, he was directed to sign a document indicating that he had earlier failed a written examination, notwithstanding that, in the interim, he had taken – and presumably passed – a "make up" test. Then, rather than being released to attend firearms training, Markin was taken by his assistant supervisor, without explanation, to a nearby conference room where he was confronted with the two FBI agents involved in the Insider Trading investigation.

2. Markin Was Threatened With The Loss Of His Liberty, As Well As His Employment, Before Being Questioned

Markin was told by the agents that there was substantial evidence that he was involved in Insider Trading; and, that he, and close family members, were likely to "go to jail" as a result.

During the interrogation, Markin told the agents, more than once, that he desired to have counsel present to assist him.  It was only after he interrupted the interrogation for a second time to indicate that he "needed an attorney," and, after several  hours of questioning, that the proceedings ended.  (*Compare* Exhibits C and E of Defendant's Motion).

3.   Immediately Thereafter, Markin Was Dismissed From His Employment

Then, immediately following the interrogation, Markin was required to sign documents terminating his employment as an FBI agent and was escorted off the premises of the FBI Academy.

Thus, it was the defendant's "well founded" concern that unless he answered all of their questions he would be terminated from employment.  Markin's belief was both subjectively held (*See* Markin Affidavit, Defendant's Exhibit B) and objectively reasonable.

4.   The Government's Efforts To Distinguish This Case From *Garrity* And Its Progeny Are Unavailing

The Government relies upon *United States v. Johnson,* 131 F.3d 132, 1997 W.L. 792443 (2d Cir. 1997), to contend that a statement will not be suppressed based upon a defendant's subjective belief that refusing to answer questions would violate disciplinary rules.  In this case, however, there was more at work than a subjective view of the relevant disciplinary rules: The defendant was required to attend the interview; and, was then threatened with a conviction for Insider Trading and with imprisonment – not only for the defendant himself, but also for close family members.  The FBI website lists under the heading "Employment Disqualifiers" the fact

4

of a felony conviction. *See* https://www.fbijobs.gov/eligibility#fbi-eligibility.   In other words,

Markin was confronted by FBI agents with the alternative of answering questions or suffering

consequences that would result in the loss of employment.

In the effort to portray Markin's statements as "voluntary," the Government also notes

that the defendant was not in custody.  The Government compares this interrogation to a series of

cases in which statements were unlawfully obtained based upon the threat of physical violence,

and the failure to provide a suspect with adequate food, sleep and contact with family. (Gov't

Answer at p. 15).  However, as Justice Douglas plainly set forth in *Garrity*:

> The choice imposed on Petitioners was one between self-incrimination or job
> forfeiture.  Coercion that vitiates a confession under *Chambers v. State of Florida,*
> 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716, and related cases can be 'mental as well
> as physical;' the blood of the accused is not the hallmark of an unconstitutional
> inquisition.

*Garrity v. New Jersey,* 385 U.S. at 496.

### C.  Evidence Of Events That Occurred Both Before And After The Interrogation Are Relevant To Demonstrate Economic Coercion

In our initial Memorandum,  we described the evidence that Markin was effectively

terminated from his employment six days prior to the interrogation by FBI agents; that

immediately following his interrogation, he was dismissed as an FBI agent/trainee; and, that he

was immediately escorted off the premises of the FBI Academy never to return.

The Government claims that Markin's "suspended security clearance" and the events that

occurred in the immediate aftermath of the interrogation "have no bearing on his claims of

coercion during the interview."  (*See* Gov't Answer at p. 17).  To the contrary, we offer these

facts as evidence of the manner in which both the defendant's supervisors at the FBI Academy and the interrogating FBI agents set about to extract statements from the defendant.[1]

The letter by Jennifer Leigh Moore, the Acting Executive Assistant Director of the Human Resources Branch of the FBI, dated November 12, 2021, stated that Markin's security clearance was suspended indefinitely.  (Exhibit F to Defendant's Motion).  The letter stated that the suspension would continue until the FBI investigation of the underlying matter was completed and his security clearance re-evaluated. The letter added that a suspension of an employee's access to classified information "results in the loss of access to controlled FBI space."  And, the letter stated that the suspension of Markin's security clearance was effective upon his receipt of the letter.  (Exhibit F).

The fact that the suspension of  Markin's security clearance resulted in the loss of employment was made explicit in a letter dated November 16, 2021 signed by Katherine Brideau, the Unit Chief of the Performance Appraisal Unit.  This letter was also delivered to Markin at the time of his interrogation.  (Exhibit G to Defendant's Motion).

Immediately following his interrogation, Markin was required to sign a document entitled "Dismissal Form."  (Exhibit G to Defendant's Motion).  It is noteworthy that, while the form states Markin's security clearance was "suspended," it announces his dismissal from the FBI training program. The Government does not even attempt to explain when in the sequence of events, or at whose direction, the decision was made to dismiss Markin.

---

[1]  We will remind the Court, and the Government, of this argument if the Government seeks to offer evidence of conduct by the defendant prior to, and subsequent to, his trading activity in Pandion stock as proof of his *mens rea* pursuant to Fed.R.Evid. 404(b); or, if the Government seeks to call an expert witness to compare the defendant's trading activity in connection with Pandion, to the defendant's prior and subsequent trading activity.

The timing of the letters, the content of the documents, and the sequence in which they were served upon Markin lead to one conclusion: The decision to dismiss Markin was made prior to his interrogation. The dismissal was delayed in order to give the FBI the opportunity to interrogate Markin about his alleged Insider Trading activity before telling him that he was dismissed. And, the agents used the opportunity to confront Markin with the "Hobson's Choice" of speaking to the agents or losing his employment – precisely the scenario outlawed in *Garrity*. The fact that immediately after the interrogation, Markin was dismissed and escorted off the premises only cements this conclusion.

### D. Count Thirty-One Of The Indictment Should Be Dismissed For Lack Of Venue. In The Alternative, This Count Must Be Severed Pursuant to Fed.R.Crim.P. 14(a)

The Government properly notes that a defendant's false statements during the interrogation can be offered into evidence regardless of whether they are otherwise protected by *Garrity. See United States ex rel Annunziato v. Deegan,* 440 F.2d 304 (2d Cir. 1971).

However, Count Thirty-One of the instant Indictment should be dismissed for lack of venue. In *United States v. Cabrales,* 524 U.S. 1, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998), and *United States v. Rodriguez-Moreno,* 526 U.S. 275, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999), the Supreme Court held that the Government must prove, by a preponderance of the evidence, that conduct essential to the crime charged occurred within the District where the prosecution is brought. Venue must be proper as to each count. *See United States v. Saavedra*, 223 F.3d 85, 89 (2d Cir. 2000). In *United States v. Bin Laden, et al.,* 146 F.Supp.2d 373 (S.D.N.Y 2001), Judge Sand ruled that statements allegedly made by a defendant to FBI agents in the Northern District of Texas did not give rise to venue in the Southern District of New York. The Court noted that in each instance in which a False Statement count was considered a continuing offense, there

7

existed what the Court describes as a "geographic discontinuity" between the defendant's making of the disputed statement and the actual receipt of that statement by the relevant federal authority.  *Id.* at 376.

In this case, as in *Bin Laden*, the statement was made by the defendant directly to the FBI agents in a district other than the Southern District of New York.  And, the False Statement count does not contain an "essential element" which requires additional conduct beyond the making of the statement.[2]

In the alternative, we submit that the False Statement count should be severed in accordance with the Fed.R.Crim.P. 14(a).  Any attempt to confine the impact of the statement to Count Thirty-One with a limiting instruction would be unworkable:  no jury would be able to follow this instruction; particularly in light of the fact that the Government would allege that the statement is a false narrative of the events that led the defendant to trade in the stock of Pandion. In contrast, any prejudice suffered by the Government would be minimal.  Should the defendant be convicted on Conspiracy or substantive charges of Insider Trading, the relevant statutes clearly afford the Court adequate scope for sentencing.  Indeed, even without a conviction on Count Thirty-One, the Government would be able to argue that the defendant's statements to agents were "relevant conduct" to be considered in imposing sentence.  And, U.S.S.G. § 2B1.1(c)(3) provides:

> If […] (B) the defendant was convicted under a statute proscribing false, fictitious or fraudulent statements or representations generally; e.g., 18 U.S.C. § 1001 […]; and (C) the conduct set forth in the count of conviction establishes an offense

---

[2]  In *United States v. Mahaffy,* 2006 W.L. 2224518 (E.D.N.Y. 2006), the Court declined to follow the holding in *Bin Laden* where two factors were present that are also present here:  (1) The Indictment contained counts alleging Conspiracy to Engage in Securities Fraud; and (2) the False Statement counts each alleged that the conduct described in those counts took place in the District of Indictment, and elsewhere.

specifically covered by another Guideline in Chapter Two (Offense Conduct), apply that other Guideline.

Accordingly, we submit that the statements must be suppressed; and, that the charges in Count Thirty-One must be dismissed or severed.

## II.    The Government Must Choose Among Three Sets Of Counts Alleging Fraud Which Are, Based Upon The Current Indictment, Multiplicitous

The Government's knee-jerk response to our argument that counts of the Indictment are multiplicitous is to cite the "same elements" test under *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); and to suggest that the motion is premature. The Government's argument overlooks (1) the effect of the Government's "Speaking Indictment;" and (2) those Due Process concerns cited in our Memorandum.

### A.  The Government Ignores The Content Of Its "Speaking Indictment," As Well As Our Due Process Concerns

There is no dispute that an Indictment violates the Double Jeopardy clause when it charges a single offense multiple times, in separate counts, when, in law and fact, only one crime has been committed.  *See United States v. Holmes,* 44 F.3d 1150, 1153-1154 (2d Cir. 1995).

In *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Supreme Court, while ruling that the *Blockburger* test controls, noted that the Double Jeopardy bar applies both in the multiple prosecution and the multiple punishment contexts.  *Id.* at 696.

In its Answer, the Government does not take issue with our assertions that, according to the current Indictment (1) the defendant is charged with Insider Trading only with respect to trading in advance of the public announcement of the Tender Offer by Merck for the stock of Pandion Therapeutics Ltd. ("Pandion"); and, (2) that all of the three sets of fraud charges derive from the defendant's alleged misappropriation of material non-public information regarding a

9

Tender Offer within the possession of his romantic partner, one of the attorneys involved in the negotiations. We acknowledge that, even where the Government offers a "Speaking Indictment," it does not, thereby, purport to "make a detailed presentation of the entirety of the evidence." *United States v. Ji,* 2022 WL 595259 (E.D.N.Y. 2022)(Chen, J.). Nonetheless, when the charges upon which the defendant is tried differs significantly from the charge upon which the grand jury voted an Indictment, a constructive amendment occurs. *See United States v. Dove,* 884 F.3d 138, 146 (2d Cir. 2018). And, even where no constructive amendment to the Indictment occurs, a prejudicial variance occurs when the evidence at trial is materially different from the evidence alleged in the charging instrument. *Id.* at 149.

Moreover, as we argued in our initial Memorandum in support of the motions, there are Due Process concerns present in this case that counsel in favor of action by the Court at this juncture; namely, that if confronted with a 31-Count-Indictment encompassing Conspiracy and substantive charges relating to three separate theories of fraud, the jury may reach a compromise verdict convicting the defendant of some charges while acquitting him of others, without regard to any purported difference in the elements underlying those charges. This concern is particularly troubling in the present case where the Securities & Exchange Commission ("SEC") has brought a civil action against the defendant based upon an alleged violation under 15 U.S.C. § 78J(b) and Rule 10(b)-(5). Should the jury find the defendant guilty on one or more of these charges as the result of a compromise, the SEC will, no doubt, argue that the verdict should be given *res judicata* effect.

**B. The "Elements" Of Insider Trading Pursuant To The Three Sets Of Statutes Involved Here Are Fact Dependent, And Have Recently Been In Flux: The Saga Of *United States v. Blaszczak***

*United States v. Blaszczak,* 947 F.3d 19 (2019)(Blaszczak I), involved the following set of facts:  Blaszczak, a consultant for hedge funds, formerly worked as an employee for CMS, an agency within the U.S. Department of Health and Human Services that administers Medicare and Medicaid.  At various times between 2009 and 2014, Blaszczak obtained material non-public information about the timing and substance of proposed CMS rule changes that would affect the reimbursement rates for certain types of medical care for various health conditions.  Blaszczak passed that information to others who engaged in profitable short sales of the shares of companies that would be negatively affected by reimbursement rate reductions when they became effective.  Blaszczak and the other defendants were indicted and tried on substantive charges of Securities Fraud under both 18 U.S.C. § 1348 and 15 U.S.C. § 78J(b) and 17 C.F.R. § 240.10(b)-(5). Blaszczak was convicted of some of those counts with which he was charged, including the Securities Fraud count under Title 18 U.S.C. § 1348.

The convictions were affirmed by the Court of Appeals.  With regard to the "element" that the confidential information which was the subject of the misappropriation must constitute "property," the Second Circuit held that a Government's agency's confidential information qualifies in order to sustain a violation under 15 U.S.C. § 78J(b) and 17 C.F.R. § 10(b)-(5) as well as under 18 U.S.C. § 1348.  However, the Court held that the "element" that the source of the information must receive a "personal benefit" does not apply to Securities Fraud prosecutions under Title 18 U.S.C. § 1348.

While the defendant's *Certiorari* petitions were pending, the United States Supreme Court issued its ruling in *Kelly v. United States,* 140 S.Ct. 1565 (2020).  The Supreme Court further vacated the decision in *United States v. Blaszczak (I)* and remanded the case to a different panel of Second Circuit Judges, on the basis that the Supreme Court's ruling in *Kelly* called into

11

question the proof regarding the "property" element; namely, that the confidential information at issue in *Blaszczak* constituted "property" or a "thing of value" within the meaning of the fraud and conversion statutes.

Upon remand, the Second Circuit held, in pertinent part, that the Government's intervening decision to seek dismissal of substantive counts convicting the defendants of Wire Fraud, Conversion of United States Property and Securities Fraud, under Title 18, was consistent with the Court's independent view of the merits.

However, in a concurring opinion by Judge Walker, joined by Judge Kearse, the Judges took issue with the holding that 18 U.S.C. § 1348 does not require proof that the tipper received a "personal benefit."  Judge Walker noted that this holding stands in contrast to the requirement of proof of a tipper's personal benefit when the Government seeks criminal or civil penalties for Insider Trading under Title 15 and SEC Rule 10(b)-(5).  Judge Walker noted that it was "no accident" that the jury convicted the defendants of Insider Trading Fraud in violation of 18 U.S.C. § 1348 but acquitted them of the same conduct under § 10(b)-(5).

Judge Walker described this view of the elements of the two versions of Securities Fraud as creating a "glaring anomaly" that warrants further attention by Congress and the Courts.  *See United States v. Blaszczak*, 56 F.4th 230 (2d Circuit 2022)(Blaszczak II).

In view of the evolving nature of the elements of Securities Fraud and Tender Offer Fraud under the various statutes, and the Due Process concerns that exist for this defendant, we respectfully submit that the Government should be required to choose among the varying theories of fraud set forth in the instant Indictment.

Moreover, in the wake of the concurring opinion by two members of the Panel in *Blaszczak II*, and the unsettled nature of the law regarding the elements of a prosecution under 18 U.S.C. § 1348, if the Government proceeds with the charges under that section, the Court should include, in its instructions on the applicable law for those counts, the "personal benefit" element.

## III.   Conclusion

For all of the reasons set forth herein, we respectfully request that the Court should (1) suppress statements made by the defendant to FBI agents on November 18, 2021; (2) dismiss Count Thirty-One of the Indictment for lack of venue; or, in the alternative, sever that count in accordance with Fed.R.Crim.P. 14(a); and (3) require the Government to elect among the three sets of counts relating to substantive allegations of Insider Trading and, dismiss the remaining counts.


Dated:  New York, New York
        February 13, 2023


                              Respectfully submitted,

                              SERCARZ AND RIOPELLE, LLP

                              By: /s/ Maurice H. Sercarz_____
                                   950 Third Avenue, 31st Floor
                                   New York, New York 10019
                                   Telephone: (212) 586-4900
                                   Email: msercarz@sercarzandriopelle.com
                                   *Attorneys for Seth Markin*

13