UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,   Indictment No.: 22 CR 395 (ER)

v.

SETH MARKIN,

                 Defendant.

------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF SETH MARKIN'S
MOTION TO DISMISS COUNT ONE OF THE INDICTMENT
AND FOR ADDITIONAL RELIEF**

                                                    SERCARZ & RIOPELLE, LLP
                                                    950 Third Avenue, 31st Floor
                                                    New York, New York 10022
                                                    Telephone: 1-212-586-4900
                                                    *Attorneys for Seth Markin*

**TABLE OF CONTENTS**

STATEMENT OF FACTS ................................................................................................. 1

    The Indictment ..................................................................................................... 1

    The Factual Allegations ........................................................................................ 2

ARGUMENT ..................................................................................................................... 4

I.    THE ACCOUNT OF EVENTS IN THIS "SPEAKING INDICTMENT" DOES NOT SUPPORT THE INFERENCE THAT THE DEFENDANT AND WONG WERE ENGAGED IN A CONSPIRACY TO PARTICIPATE IN INSIDER TRADING. ACCORDINGLY, COUNT ONE MUST BE DISMISSED ............................................ 4

II.    IN THE ALTERNATIVE, THE COURT SHOULD REQUIRE THE GOVERNMENT TO PROVIDE, PRIOR TO TRIAL, A LIST OF ALLEGED CO-CONSPIRATORS. AT TRIAL, BEFORE PERMITTING THE INTRODUCTION OF ANY STATEMENT PURSUANT TO FED.R.EVID. 801(d)(2)(E), THE GOVERNMENT SHOULD BE REQUIRED TO DEMONSTRATE THE EXISTENCE OF A CONSPIRACY INVOLVING BOTH THE DEFENDANT AND THE DECLARANT; AND, THAT ANY PROFFERED STATEMENT WAS MADE IN THE COURSE OF AND IN FURTHERANCE OF THE CONSPIRACY ..................................................... 7

    A. Statements By The Defendant And Alleged Co-Conspirators Cannot Meet The Foundational Requirements Of Rule 801(d)(2)(E) ....................................... 8

    B. This Court Should Adopt The Modified *Geany* Rule Used In *United States v. Saneaux* .................................................................................................................. 9

    C. *Brady* Request ........................................................................................................ 9

III.    THE DEFENDANT WILL OBJECT TO THE INTRODUCTION OF EITHER THE FINGERPRINT REPORT OR EXPERT TESTIMONY REGARDING THE FINDINGS CONTAINED IN THE REPORT WITHOUT FURTHER INFORMATION TO DEMONSTRATE RELEVANCE ............................................ 10

CONCLUSION ................................................................................................................. 11

# **TABLE OF AUTHORITIES**

Cases

*Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775 (1987) .................................................. 7

*Brady v. Maryland,* 373 U.S. 83 (1963) ........................................................................................ 9

*Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) ....................... 4

*Dirks v. SEC,* 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983) ........................................ 5, 6

*United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181 (2d Cir. 1989).................................. 8

*United States v. Brunsthein,* 344 F.3d 91 (2d Cir. 2003)............................................................... 5

*United States v. Diez,* 736 F.2d 840 (2d Cir. 1984)....................................................................... 6

*United States v. Gaviria,* 740 F.2d 174 (2d Cir. 1984).................................................................. 6

*United States v. Hempstead,* 2017 W.L. 401938 (U.S.D.C. D.Conn) ........................................... 9

*United States v. Maldonado-Rivera,* 922 F.2d 934 (2d Cir. 1990)................................................ 6

*United States v. O'Hagan,* 521 U.S. 642, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997)...................... 4

*United States v. Russo,* 302 F.3d 37 (2d Cir. 2002)....................................................................... 8

*United States v. Salman,* 580 U.S. 39, 137 S.Ct. 420, 196 L.Ed.2d 351 (2016)............................ 5

*United States v. Saneaux,* 365 F.Supp.2d 493  (S.D.N.Y. 2005)............................................... 8, 9

## STATEMENT OF FACTS

On or about July 21, 2022, Seth Markin (the "Defendant") and Brandon Wong ("Wong") were named in a 31 Count Indictment. (A copy of the Indictment is annexed hereto as **Exhibit A**). While the Indictment alleges, in conclusory terms, that the defendant and Wong conspired to commit Securities Fraud, and engaged in conduct amounting to Insider Trading, this "speaking Indictment" contains no factual basis to support the inference that there was a Conspiracy to engage in unlawful conduct.

**The Indictment**

Count One charges the Defendant and Wong with Conspiracy to Commit Securities Fraud and Tender Offer Fraud in violation of 18 U.S.C § 371.

Counts Two through Five charge the Defendant with substantive counts of Securities Fraud involving purchases of shares of Pandion Therapeutics ("Pandion") by Markin, a friend, and two family members allegedly tipped by Markin. Counts Six through Nine charge the Defendant and Wong with substantive counts of Securities Fraud based upon the purchase of shares of Pandion by Wong, members of Wong's family, and friends allegedly tipped by Wong. Counts Ten through Fifteen charge Wong with substantive counts of Securities Fraud based upon the purchase of shares in Pandion by Wong and others allegedly tipped by Wong. Title 15 U.S.C. §§ 78j(b) and 78ff; Title 17; CFR §§ 240.10b-5, 240.10b5-1 and 240.10b5-2.

Count Sixteen charges the Defendant and Wong with Securities Fraud in violation of 18 U.S.C. § 1348 and § 2.

Counts Seventeen through Thirty charge the Defendant and Wong with substantive counts of Tender Offer Fraud corresponding to the substantive counts of Securities Fraud set forth in Counts Two through Fifteen, referenced above.

Finally, Count Thirty-One charges the Defendant with False Statements allegedly made to FBI agents during an interview on November 18, 2021 in violation of 18 U.S.C. § 1001(a)(2).

**The Factual Allegations**

The "speaking" portion of the Indictment describes the defendant's relationship with the Law Firm Associate; and, her involvement in negotiations by Merck & Co. to acquire stock in Pandion Therapeutics.

The Indictment alleges that the defendant engaged in the following unlawful conduct:

> In February 2021, MARKIN secretly looked through the Law Firm Associate's confidential work documents, without her permission, and learned that, in a matter of weeks, Merck & Co. ("Merck"), a publicly traded pharmaceutical company, was going to acquire Pandion Therapeutics ("Pandion"), a publicly traded biotechnology company, for approximately three times the value of Pandion's share price. Markin immediately purchased Pandion stock on the basis of this material non-public information and also told several family members and friends to purchase Pandion's stock, causing WONG, another friend, and several family members to do so, including Family Member-1, Family Member-2, Family Member-3, Family Member-4, and Friend-1.

(Ex. A at ¶ 1).

The Indictment alleges that between on or about February 7, 2021 and February 9, 2021, Markin "tipped" his friend, Brandon Wong, and "encouraged" Wong to purchase shares of Pandion. (*Id.* ¶ 14).

The Indictment alleges that in or about February 15, 2021, Markin learned about Merck's decision to delay closing the acquisition of Pandion. Markin allegedly told Wong, that "the news

2

that was supposed to come this week may come out next week." Markin, however, assured Wong that "seeing how nobody (except the insiders) … knows the news is coming it shouldn't effect [sic] the price." Two days later, Markin allegedly advised Wong that "everything is ready for the news to drop." (*Id.* ¶ 16).

The Indictment alleges that Markin and Wong discussed telling their family members and friends about the stock; and, that both did so. (*Id.* at ¶ 18).

Finally, the Indictment alleges that <u>after</u> Wong sold his Pandion stock, he told Markin that he was going to "call up my Rolex man" and tell him "I want matching panda watches." The Indictment alleges that Wong subsequently purchased two Rolex watches for himself for approximately $55,000 and a Rolex watch called the "Panda" which he presented to Markin as a "thank you" gift for the Pandion stock tip. Wong also told Markin "all the vacations are on meee [sic]." Wong subsequently paid for expenses during a trip to Hawaii in which they both stayed at luxury hotels. Wong also treated Markin to a tasting menu at a three-Michelin-starred restaurant in Brooklyn, New York. (Indictment ¶ 20).

Thus, while the Government has alleged both Securities Fraud and Tender Offer Fraud based upon both Title 15 and Title 18 of the United States Code; the Government provides no factual support for the allegation that the defendant and Wong <u>agreed</u> to engage in unlawful insider trading. Notably absent from the Indictment is reference to any conversation or communication in which the defendant and Wong <u>agreed</u> to trade on material non-public information that Markin allegedly disclosed to Wong.

There are, likewise, no allegations that Wong agreed to provide Markin with a personal benefit <u>in exchange for</u> his decision to impart the material non-public information. The only

3

instance in which the Indictment refers to a benefit is in Paragraph 20 of the Indictment which clearly indicates that <u>after</u> Wong sold his shares, he told Markin that he would provide Markin with a stream of benefits including, *inter alia,* a Rolex Panda watch.

And, there is no factual allegation that Markin and Wong agreed to conceal their activities from law enforcement.

## **ARGUMENT**

I.  **THE ACCOUNT OF EVENTS IN THIS "SPEAKING INDICTMENT" DOES NOT SUPPORT THE INFERENCE THAT THE DEFENDANT AND WONG WERE ENGAGED IN A CONSPIRACY TO PARTICIPATE IN INSIDER TRADING.  ACCORDINGLY, COUNT ONE MUST BE DISMISSED**

The Supreme Court long ago held that there is no "general duty between all participants in market transactions to forgo actions based on material, non-public information. *Chiarella v. United States*, 445 U.S. 222, 233, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980).  However, the "traditional" or "classical theory" of insider trading provides that a corporate insider violates Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5 (2017), when he "trades in the Securities of his corporation on the basis of material, non-public information" because "a relationship of trust and confidence [exists] between the shareholders of a corporation and those insiders who have obtained confidential information by reason of their position with that corporation.  *United States v. O'Hagan,* 521 U.S. 642, 651-52, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997).  Similarly, the "misappropriation theory" of insider trading provides "that a person […] violates section 10(b) and Rule 10b-5 when he misappropriates confidential information for securities trading purposes in breach of a duty owed to the source of the information. *Id.* at 652, 117 S.Ct. 2199.

In *Dirks v. SEC,* 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983), the Supreme Court held that a tipper breaches his fiduciary duty when the tipper discloses the insider information for a personal benefit. The Court held that a jury can infer a personal benefit, and thus a breach of the tipper's duty, where the tipper received something of value in exchange for the tip. *Id.* at 664, 103 S.Ct. 3255. This holding would, presumably, apply to an individual involved in Insider Trading pursuant to the "misappropriation theory," who subsequently tips others to the material non-public information that was unlawfully obtained.

In *United States v. Salman,* 580 U.S. 39, 137 S.Ct. 420, 196 L.Ed.2d 351 (2016), the Court stated that "the elements of fiduciary duty and exploitation of non-public information also exist when an insider makes a gift of confidential information to a trading relative or friend." Citing *Dirks,* the Court noted that in such cases "the tip and trade resemble trading by the insider followed by a gift of the profits to the recipient."

While a tip that is the functional equivalent of insider trading, followed by a gift to the tippee, may give rise to charges of Securities Fraud; it does not follow that the conduct involved in providing the tip, standing alone, is proof of a conspiracy.

In our prior motions, we noted that the Government has charged the Defendant with Insider Trading – in a manner we claim to be multiplicitous – pursuant to charges both of Securities Fraud and Tender Offer Fraud; and, in violation both of Title 15 and Title 18 United States Code. Nonetheless, in order to establish that two or more defendants conspired to violate the law, it is necessary to prove certain elements inherent in all versions of Conspiracy. *See United States v. Brunsthein,* 344 F.3d 91, 99 (2d Cir. 2003) (a conviction must rest on proof of every element of the crime charged). It is hornbook law that in order to establish a conspiracy, the Government must prove that each defendant knew of the existence of the scheme and

knowingly joined and participated therein. *See United States v. Gaviria,* 740 F.2d 174, 183-84 (2d Cir. 1984). The Government must also show evidence of purposeful behavior designed to advance the goals of the conspiracy. *See United States v. Diez,* 736 F.2d 840, 843 (2d Cir. 1984). And, the Government must show that each conspirator agreed to participate in what he knew to be a collective venture directed toward a common goal. *See United States v. Maldonado-Rivera,* 922 F.2d 934, 963 (2d Cir. 1990). Under the circumstances alleged in the present Indictment, there is no basis to infer that the requisite agreement existed between the defendant and Wong or any downstream tippee.

The instant Indictment alleges that by misappropriating insider information in the possession of the Law Firm Associate, the Defendant breached the fiduciary duty that the Defendant owed to the Associate, who in turn owed a duty of confidentiality to her clients. *See Dirks v. SEC, supra.* However, the fact that the defendant allegedly "tipped" Wong regarding Pandion, standing alone, does not support the inference of an agreement between the defendant and Wong whereby they conspired to engage in unlawful insider trading.[1]

As is set forth in the Statement of Facts, *supra,* there are no allegations in the Indictment upon which the Government can rely in proving that the defendant agreed with others to engage in unlawful insider trading; or that any alleged tippee traded in the stock of Pandion with knowledge of the unlawful nature of the trades, and an intent to further the common scheme.

Under these circumstances, while the Government can proceed with substantive charges of Insider Trading, the Conspiracy Count must be dismissed.

---

[1] Nowhere does the Indictment describe the information the defendant alleged imparted to Wong.

6

**II.     IN THE ALTERNATIVE, THE COURT SHOULD REQUIRE THE GOVERNMENT TO PROVIDE, PRIOR TO TRIAL, A LIST OF ALLEGED CO-CONSPIRATORS. AT TRIAL, BEFORE PERMITTING THE INTRODUCTION OF ANY STATEMENT PURSUANT TO FED.R.EVID. 801(d)(2)(E), THE GOVERNMENT SHOULD BE REQUIRED TO DEMONSTRATE THE EXISTENCE OF A CONSPIRACY INVOLVING BOTH THE DEFENDANT AND THE DECLARANT; AND, THAT ANY PROFFERED STATEMENT WAS MADE IN THE COURSE OF AND IN FURTHERANCE OF THE CONSPIRACY**

The Government has provided defense counsel with Discovery containing excerpts of interviews with numerous "downstream tippees." These excerpts reflect that some of the witnesses received information about Pandion directly from the Defendant. Other excerpts indicate that the witness received the information from Brandon Wong, who, in turn, had received it from the Defendant. However, in the excerpted interviews, none of the witnesses described the information in substantial detail; nor, did any of the witnesses indicate that at the time he/she received the tip, he/she knew that the tip contained material non-public information. And, in no instance did the excerpted interview of a witness indicate that he/she entered into an agreement with the Defendant to purchase shares in Pandion.

As long ago as *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775 (1987), the Supreme Court fashioned procedures for determining the admissibility of statements by an alleged co-conspirator pursuant to Fed.R.Evid. 801(d)(2)(E). The Court held, *inter alia*, that before admitting a co-conspirator's statement over an objection that it does not qualify under the rule, the Court must be satisfied (a) that there was a conspiracy involving the declarant and the non-offering party; and, that the statement was made; (b) during the course of; and (c) in the furtherance of the conspiracy. A trial court must resolve the issue in accordance with Fed.R.Evid. 104(a) which provides "preliminary questions concerning […] the admissibility of evidence shall be determined by the Court." *Bourjaily v. United States,* 107 S.Ct. at 2778.

A.      **Statements By The Defendant And Alleged Co-Conspirators Cannot Meet The Foundational Requirements Of Rule 801(d)(2)(E)**

As we set forth above, the Indictment fails to allege facts supporting a conspiracy involving the defendant and Brandon Wong; let alone, a conspiracy involving the defendant and any other individual whose statements the Government may seek to offer.

Evidence that the statement sought to be admitted was made "during the course of" a Conspiracy is best described as a "temporal requirement." *See United States v. Saneaux,* 365 F.Supp.2d 493, 499 (S.D.N.Y. 2005). The Indictment alleges that the Law Office Associate became involved in negotiations by Merck to acquire Pandion on January 31, 2021; and, that the tender offer by Merck for stock in Pandion was publicly announced on February 25, 2021. In the absence of any evidence of an ongoing agreement to thwart an investigation by FINRA, the Securities & Exchange Commission ("SEC") or the FBI, these two dates would represent the outer boundaries of any alleged conspiracy.

The statement must also be made "in furtherance of" the Conspiracy. *Saneaux, supra* at 499. To fall within the hearsay exemption "the conspiratorial objective being furthered by the declarant's statement must, in fact, be the objective of the Conspiracy between the defendant and the declarant. *See United States v. Russo,* 302 F.3d at 45 cited in *United States v. Saneaux, supra* at 500. The principal question underlying the "in furtherance" issue is whether the statement promoted, or was intended to promote the goals of the conspiracy. *See United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181, 1199 (2d Cir. 1989).

B.     **This Court Should Adopt The Modified *Geany* Rule Used In *United States v. Saneaux***

Counsel is mindful that courts in this Circuit do not, in the ordinary course, require a pretrial hearing in order to resolve issues regarding the underlying factual basis for the introduction of evidence pursuant to the co-conspirator exception to the hearsay rule. *See United States v. Hempstead,* 2017 W.L. 401938 (U.S.D.C. D.Conn).

However, where, as here, there is a real danger that a jury would be unable to follow a Court's instruction, made at the end of the case, to disregard evidence of statements by alleged co-conspirators, the Court should follow the procedure outlined in *United States v. Saneaux*. In that case, Judge Haight required the Government to offer evidence at trial demonstrating that it would satisfy the foundational requirements of the co-conspirator exception prior to the introduction of alleged co-conspirator declarations. As the Court stated:

> I will not allow the jury to hear recorded, *Grullon* declarations "subject to connection" though [sic] the medium of subsequently offered evidence. Rather, the Government is directed to elicit and place before the jury all evidence it will rely upon to satisfy all pre-requisites of admissibility, including the "in furtherance" requirement so that I may hear counsel argue the issue and rule upon the admissibility of the recorded *Grullon* declarations before those declarations are placed before the jury.

*Saneaux, ibid* at 504.

We submit that this protocol should be adopted here.

C.     ***Brady* Request**

In accordance with *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny, defense counsel requests that the Government make available to defense counsel all statements made by any alleged co-conspirator in which the declarant (1) denied knowledge that the Defendant was

9

the source of the information upon which he traded; (2) denied knowledge that the defendant was in possession of material non-public information; or (3) denied knowing the precise nature of the information underlying the recommendation.

### III. THE DEFENDANT WILL OBJECT TO THE INTRODUCTION OF EITHER THE FINGERPRINT REPORT OR EXPERT TESTIMONY REGARDING THE FINDINGS CONTAINED IN THE REPORT WITHOUT FURTHER INFORMATION TO DEMONSTRATE RELEVANCE

Annexed hereto as **Exhibit B** is an FBI Laboratory Report regarding fingerprint evidence produced by the Government.

The report purports to compare a known exemplar of the defendant's fingerprints with fingerprints obtained from the outer binder and three pages of text contained in the binder.

At trial, the Government will, no doubt, seek to elicit testimony from an expert witness in reliance upon the report for the purpose of supporting the assertion that the defendant obtained material non-public information by "rummaging" through documents in the possession of the Law Office Associate. However, the FBI Laboratory Report fails to provide any description of (a) the content of the three pages upon which the defendant's fingerprints were allegedly recovered; (b) where, on each page, the fingerprint evidence was located; (c) whether the Government sought to acquire fingerprint evidence from any of the other pages contained in the binder; and, (d) the results of that attempt.

Unless such evidence is provided to defense counsel, there will be no basis upon which to determine whether, even if the Defendant's fingerprints were found on the outside of the binder and on three of the pages within the binder, this evidence supports the Government's contention that the Defendant deliberately read through the contents of the binder seeking information about the corporate merger described therein. The Court should order the production of this additional information in order to determine whether the probative value of this evidence will outweigh its

potential for prejudice. Counsel reserves the right, upon the receipt of this information, (a) to object to the introduction of the fingerprint evidence on the ground that the probative value is outweighed by the potential for prejudice; (b) to move to examine the original documents that were the subject of the Laboratory Report; (c) to oppose testimony on the part of any expert proffered by the Government; and (d) to provide notice of a rebuttal expert.

## CONCLUSION

For all the reasons set forth herein, we respectfully move this Court (1) to dismiss the Conspiracy count in the Indictment; (2) in the alternative, to require the Government to provide, prior to trial, a list of alleged co-conspirators; and to provide, at trial, evidence in support of the necessary foundational requirements before being permitted to introduce any statements pursuant to Fed.R.Evid. 801(d)(2)(E); (3) to order the Government to comply with the defendant's *Brady* request; (4) to require the Government to produce additional information in connection with the fingerprint examination referenced in the FBI Laboratory Report; and (5) to grant such other and further relief as, to this Court, may seem just and proper.

Dated: New York, New York
June 8, 2023

Respectfully submitted,

SERCARZ AND RIOPELLE, LLP

By: /s/ Maurice H. Sercarz
950 Third Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 586-4900
Email: msercarz@sercarzandriopelle.com
*Attorneys for Seth Markin*

11