UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                :

  UNITED STATES OF AMERICA

                                :

       - v. -                    22 Cr. 395 (ER)

                                :

  SETH MARKIN,

                                :

         Defendant.

                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT SETH MARKIN'S JUNE 2023 PRETRIAL MOTIONS AND IN SUR-
REPLY TO SETH MARKIN'S DECEMBER 2022 PRETRIAL MOTIONS**

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Kiersten A. Fletcher
Nicolas Roos
Negar Tekeei
Assistant United States Attorneys
- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 1

ARGUMENT .......................................................................................................... 4

I.     The Defendant's Motion to Dismiss Count One Should Be Denied. .................... 4
      A.   Applicable Law ........................................................................................ 4
      B.   Discussion .............................................................................................. 6

II.    The Defendant's Motion to Preclude the Government from Offering Co-Conspirator
       Statements "Subject to Connection" Should Be Denied. .................................... 10

II.    The Defendant's Request for Brady Material Should Be Denied as Moot ......................... 11

III.   The Defendant's Motion to Compel Additional Information about the Fingerprint Report
       and Exclude Relevant Expert Testimony Should be Denied as Premature and Moot. ........ 12

IV.   Markin's Motion to Dismiss for Lack of Venue as to Count Thirty-One Should Be
       Denied. .................................................................................................... 13

V.    Markin's Motion to Sever Should Be Denied. ................................................... 18
      A.   Applicable Law ........................................................................................ 18
      B.   Discussion .............................................................................................. 20

CONCLUSION ...................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Bourjaily v. United States*, 483 U.S. 171 (1987) .......................................................... 10

*Hamling v. United States*, 418 U.S. 87 (1974)........................................................... 4, 5

*Jones v. United States*, 526 U.S. 227 (1999) ................................................................ 4

*Richardson v. Marsh*, 481 U.S. 200 (1987) ................................................................ 19

*Russell v. United States*, 369 U.S. 749 (1962) ............................................................. 5

*United States v. Adekanbi*, 675 F.3d 178 (2d Cir. 2012) ............................................ 15

*United States v. Amato*, 15 F.3d 230 (2d Cir. 1994) .................................................. 19

*United States v. Bin Laden*, 146 F. Supp. 2d 373 (S.D.N.Y. 2001).......................... 17

*United States* v. *Blakney*, 941 F.2d 114 (2d Cir. 1991) ............................................. 19

*United States v. Candella*, 487 F.2d 1223 (2d Cir. 1974) ..................................... 16, 17

*United States v. Canniff*, 521 F.2d 565 (2d Cir. 1975) ............................................. 13

*United States v. Chow*, 993 F.3d 125 (2d Cir. 2021) .................................................. 9

*United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012)............................................ 14, 15

*United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001) ........................................ 5

*United States v. Ferrarini*, 9 F. Supp. 2d 284 (S.D.N.Y. 1998) ............................... 21

*United States v. Fruchter*, 104 F. Supp. 2d 289 (S.D.N.Y. 2000) ............................. 10

*United States v. Gracesqui*, No. 10 Cr. 74 (PKC) (S.D.N.Y. Sept. 8, 2015)............. 19

*United States v. Hutcher*, 622 F.2d 1083 (2d Cir. 1980) ........................................... 13

*United States v. Lavidas*, No. 19 Cr. 716 (DLC) (Jan. 14, 2020) ................................ 9

*United States v. Mahaffy*, No. 05 Cr. 613 (E.D.N.Y. Aug. 2, 2006) ......................... 17

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990)............................ 10

*United States v. Martoma*, 894 F.3d 64 (2d Cir. 2017) ............................................... 9

*United States v. McGrath*, 558 F.2d 1102 (2d Cir. 1977)......................................... 22

*United States v. Milton*, No. 21 Cr. 478 (ER) (S.D.N.Y. Nov. 15, 2021)................. 14

*United States v. Naranjo*, 14 F.3d 145 (2d Cir. 1994) .............................................. 14

*United States v. Ohle*, 678 F. Supp. 2d 215 (S.D.N.Y. 2010)................................... 14

*United States v. Page*, 657 F.3d 126 (2d Cir. 2011) ............................................ 19, 20

*United States v. Peterson*, 357 F. Supp. 2d 748 (S.D.N.Y. 2005) ............................ 14

*United States v. Pinto-Thomas*, No. 15 Cr. 579 (JSR) (Apr. 16, 2019)....................... 9

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000)..................................................................... 4

*United States v. Post*, 950 F. Supp. 2d 519 (S.D.N.Y. 2013) ..................................................... 4, 6

*United States* v. *Rabbitt*, 583 F.2d 1014 (8th Cir. 1978) ............................................................. 18

*United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005) ................................................... 14, 16, 17

*United States v. Ringer*, 300 F.3d 788 (7th Cir. 2002) ............................................................ 15, 16

*United States v. Rivera*, 546 F.3d 245 (2d Cir. 2008) ................................................................. 18

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ..................................................................... 20

*United States* v. *Ruiz*, 894 F.2d 501 (2d Cir. 1990) ................................................................... 19

*United States v. Salinas*, 373 F.3d 161 (1st Cir. 2004) ............................................................... 15

*United States v. Saneaux*, 365 F. Supp. 3d (S.D.N.Y. 2005)....................................................... 11

*United States v. Scott*, 979 F.3d 986 (2d Cir. 2020) ...................................................................... 8

*United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992) ..................................................... 5, 7

*United States v. Stein*, 429 F. Supp. 2d 633 (S.D.N.Y. 2006) ...................................................... 14

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ............................................................. 5, 6

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994) ....................................................................... 10

*United States v. Thompson*, No. 13 Cr. 378 (AJN) (S.D.N.Y. Dec. 3, 2013)......................... 4, 6

*United States v. Turoff*, 853 F.2d 1037 (2d Cir. 1988) .......................................................... 18, 19

*United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013) ....................................................................... 5

*United States v. Werner*, 620 F.2d 922 (2d Cir.1980) ....................................................... 18, 19, 21

*United States v. Wilson*, No. 10 Cr. 629 (VLB) (S.D.N.Y. July 2011) ........................................ 14

*United States v. Yannotti*, 541 F.3d 112 (2d Cir. 2008)................................................................. 5

*Zafiro v. United States*, 506 U.S. 534 (1993).................................................................. 19, 20, 22

## Rules

Fed. R. Crim. P. 8(a)........................................................................................................................ 20

Fed. R. Crim. P. 12(b)(3)(A)(i)........................................................................................................ 14

Fed. R. Crim. P. 7 ............................................................................................................................. 4

Fed. R. Crim. P. 14(a)................................................................................................................. 18, 19

Fed. R. Crim. P. 16(a)(1)(G)........................................................................................................... 13

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to motions filed by defendant Seth Markin ("Markin" or the "defendant") on June 9, 2023 (1) to dismiss Count One of the Indictment, (2) to provide a list of co-conspirators and preclude the admission of co-conspirator statements pursuant to Federal Rule of Evidence 802(d)(2)(E), (3) for disclosure of *Brady* material, and (4) to compel additional information regarding a fingerprint report. (Dkt. 82 (the "Def. Mot.")). The Government further submits this memorandum of law in sur-reply to arguments first made in the defendant's reply brief filed on February 13, 2023 to (1) dismiss the false statement count for lack of venue or, in the alternative, (2) sever the false statement count from the remaining counts in the Indictment (Dkt. 54 (the "Def. Reply" and, collectively, the "Motions")).[1] As set forth below, the Motions are entirely without merit and should be denied.

## BACKGROUND

Indictment 22 Cr. 395 (ER) (the "Indictment") was filed on July 21, 2022, and charged the defendant with one count of conspiracy to commit securities fraud and tender offer fraud, in violation of 18 U.S.C. § 371 (Count One); eight counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1, and 240.10b5-2, and 18 U.S.C. § 2 (Counts Two through Nine); securities fraud, in violation of 18 U.S.C. §§ 1348 and 2 (Count Sixteen); tender offer fraud, in violation of 15 U.S.C. §§ 78n(e) & 78ff, 17 C.FR. §§ 240.14e-3(a) &

---

[1] Pursuant to the Court's Individual Practice 2.B.i. and its order dated July 5, 2023, the Government respectfully requests permission to file this limited sur-reply in response specifically to new purported bases for relief first raised in the defendant's reply brief to which the Government has not had an opportunity to respond.

240.14e-3(d), and 18 U.S.C. § 2 (Counts Seventeen through Twenty-Four); and false statements, in violation of 18 U.S.C. § 1001(a)(2) (Count Thirty-One).  (Dkt. 1).[2]

Those charges stem from Markin's participation in a scheme to trade in stock of Pandion Therapeutics ("Pandion") based on inside information that he misappropriated from his then-girlfriend, who was an attorney at a major law firm assigned to work on the acquisition of Pandion by Merck & Co. ("Merck").  (Ind. ¶ 1).  Markin secretly looked through his girlfriend's confidential work documents, without her permission, and learned that in a matter of weeks, Merck was going to acquire Pandion for approximately three times the value of Pandion's then-share price.  (*Id.*).  After misappropriating the confidential information, Markin purchased shares in Pandion, and tipped several friends and family members, including his co-defendant, Brandon Wong.  (*Id.*).

Text messages between Markin and Wong reveal how the defendant tipped Wong and others, the nature of his tips (including how Pandion stock was going to "EXPLODE" when the news of the merger dropped, that they were going to get "TRIPLE GAINS!", and details of the timing of the transaction), and encouraged Wong and others to purchase shares of Pandion.  (*Id.* ¶¶ 14-18).  Notably, in these text messages, Wong told Markin that if Wong made a lot of money on the Pandion shares, he would buy Markin a "nice android" and take them to a "fancy restaurant."  (*Id.* ¶ 15).  Markin countered that he wanted a Rolex.  (*Id.*).  And, after stating that he wanted a Rolex, Markin continued to update Wong on the status of Merck's efforts to acquire Pandion, telling Wong that "everything is ready for the news to drop," prompting Wong to buy additional shares of Pandion.  (*Id.* ¶¶ 16, 29(d)).

---

[2] "Dkt. [Number]" refers to a docket entry in this case, and "Ind." refers to the Indictment in this case.  Unless otherwise noted, case text quotations omit all internal quotation marks, citations, and previous alterations.

After Merck's acquisition of Pandion was announced publicly, and the Pandion stockholdings of Markin, Wong, and those whom they had tipped significantly increased in value, Markin and Wong sold their shares of Pandion for significant profits. (*Id.* ¶ 4). With these illegal profits, Wong, Markin and their tippees purchased luxury items and gifts for each other. In fact, after Wong sold his Pandion shares, he told Markin that he was going to "call up my Rolex man" and tell him "I want matching panda watches," for himself and Markin. (*Id.* ¶ 20). Wong subsequently bought Markin the Rolex watch he wanted, which was worth approximately $40,000, as well as a trip to Hawaii and a meal at a "fancy restaurant"—indeed, a three-Michelin starred restaurant in New York. (*Id.* ¶¶ 4, 15, 20).

At the time of the relevant trades, Markin had been accepted into the Federal Bureau of Investigation ("FBI") as a new agent trainee. (*Id.* ¶ 1). To conceal their illegal insider trading scheme, Markin and Wong used an encrypted messaging application and deleted many of their text messages with each other. (*Id.* ¶ 21). They also agreed on a cover story that they could provide to law enforcement, namely, that if they were asked how they anticipated Pandion's stock price increase, they could say they "read it on Stocktwit," a social media platform for sharing stock ideas, and falsely say that the news was "publicly being announced there." (*Id.*).

In or about June 2021, after Markin and his girlfriend had ended their relationship, and as Markin was preparing to begin training as a new agent at the FBI Academy in Quantico, Virginia, Markin's former girlfriend called him to ask why his name had come up in an inquiry by the Financial Industry Regulatory Authority ("FINRA") into trading in Pandion stock. (*Id.* ¶ 5). In response, Markin lied to her, falsely claimed that he did not trade in Pandion stock, and told her that FINRA must have been referring to a different person named "Seth Markin" who also lived in Falls Church, Virginia, where Markin maintained an apartment. (*Id.* ¶ 22).

3

Then, on November 18, 2021, Markin lied to FBI agents when he was interviewed about his Pandion trading.  (*Id.* ¶ 5).  That day, Special Agents from the FBI interviewed Markin in connection with an investigation they told him was being conducted by law enforcement in the Southern District of New York relating to insider trading in Pandion stock.  (*Id.* ¶ 23).  During the interview, Markin adhered to the fake cover story he and Wong had concocted, and falsely told the agents (i) that he learned about Pandion on StockTwits, (ii) that he purchased the stock because of a recent earnings report and a new board member addition, and (iii) that he did not know that his former girlfriend worked on the Pandion transaction.  (*Id.*).

## ARGUMENT

### I.    The Defendant's Motion to Dismiss Count One Should Be Denied.

The defendant argues that Count One of the Indictment should be dismissed because the "speaking" portion of the Indictment does not contain sufficient factual allegations of an agreement between him and his co-conspirators and alleges the exchange of gifts only after the alleged insider trading took place. The defendant is wrong on the facts and the law, and his motion should be denied.

#### A.    Applicable Law

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him." *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) (citing *Jones v. United States*, 526 U.S. 227, 232 (1999); *Hamling v. United States*, 418 U.S. 87, 117 (1974); Fed. R. Crim. P. 7(c)).  "A defendant faces a 'high standard' in seeking to dismiss an indictment." *United States v. Thompson*, No. 13 Cr. 378 (AJN), 2013 WL 6246489, at *6 (S.D.N.Y. Dec. 3, 2013) (quoting *United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013)).

"Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense

charged . . . .'" *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (quoting Rule 7(c)(1) (alterations omitted)).  To satisfy this rule, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted).  Although there are circumstances in which greater specificity is required to pass muster under Rule 7(c) and the constitutional provisions it implicates, that heightened standard is limited to "very rare cases," such as those involving refusal to answer questions before Congress, in which "specification of how a particular element of criminal charge will be met . . . is of such importance to the fairness of the proceeding that it must be spelled out in the indictment[.]" *United States v. Stringer*, 730 F.3d 120, 125-26 (2d Cir. 2013) (discussing the special case of *Russell v. United States*, 369 U.S. 749 (1962)).  Otherwise, "[a]n indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Stringer*, 730 F.3d at 124 (quoting *Hamling*, 418 U.S. at 117); *see also Yannotti*, 541 F.3d at 127.

Even in cases involving very bare-bones charges, courts will not dismiss the indictment absent a showing of prejudice, *Stringer*, 730 F.3d at 124, because dismissal of an otherwise facially valid indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted).  Where a defendant has been given sufficient notice of the charges against him by means of, for example, discovery materials or a bill of particulars, prejudice will not have been shown, and the indictment should stand.  *See, e.g.*, *Yannotti*, 541 F.3d at 127; *De La Pava*, 268 F.3d at 162-65; *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992).

### B.      Discussion

The defendant falls far short of establishing any pleading deficiency, let alone meeting the "high standard" he faces in seeking to dismiss Count One of the Indictment.  *See Thompson*, 2013 WL 6246489, at *6 (quoting *Post*, 950 F. Supp. 2d at 527).  The Indictment properly alleges that the defendant conspired with Wong and others to commit securities fraud and tender offer fraud offenses.

The conspiracy count in the Indictment "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense," and for this reason alone, the defendant's motion must be denied.  *Stringer*, 730 F.3d at 124 (internal quotation marks and citation omitted).  Indeed, the Indictment specifies the time period of Count One as being in or about February 2021.  (Ind. ¶¶ 25).  It goes on to allege that the object of the conspiracy between the defendant and Wong was to commit "(i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (ii) securities fraud, in violation of Title 18, United States Code, Section 1348; and (iii) tender offer fraud, in violation of Title 15, United States Code, Sections 78n(e) & 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) & 240.14e-3(d)."  (*Id.*).  The Indictment then sets forth in detail the elements of each object of Count One.  For example, it sets forth that for the Title 15 securities fraud object, the defendant and Wong, "willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulation, Section 240.10b-5 by: (a) employing devices,

schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Section 78j(b) and 78ff." (*Id.* ¶ 26). The Indictment contains similarly detailed language for the two other objects of Count One. (*Id.* ¶¶ 27-28).

Because the Indictment tracks the language of the relevant statute and provides adequate notice regarding the nature of the charged offense, the defendant's motion should be denied. *See Stavroulakis*, 952 F.2d at 693 ("We have often stated that an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." (internal citation and quotation omitted)).

But the Indictment does far more. It contains 23 additional paragraphs of detailed allegations in the speaking portion of the Indictment; it details the dates the defendant and his co-conspirators purchased Pandion shares (Ind. ¶¶ 14-19); it explains how the defendant encouraged friends and family members to purchase Pandion stock (*id.* ¶ 13); it quotes communications between the defendant and Wong in the days leading up to the Pandion acquisition being made public (*id.* ¶¶ 15-16); and it expressly alleges that, prior to the announcement, Markin indicated he wanted a "Rolex watch" when discussing with Wong what they would buy with their illegal trading gains (*id.* ¶ 14).

The defendant suggests that, notwithstanding the detailed allegations in the speaking and non-speaking portions of the Indictment, the Indictment must be dismissed because the speaking portion does not allege an express agreement between Wong and Markin to trade on material nonpublic information. (Def. Mot. at 3). The defendant is wrong. Paragraph 25 of the Indictment

explicitly charges that Markin and Wong "agreed together and with each other to commit offenses against the United States." (*Id.* ¶ 25). The defendant cites no legal basis for his suggestion that the Indictment must contain "factual support" for the Grand Jury's allegation that Markin and Wong agreed to commit the relevant offense, and the Government is aware of none.

Nor is there any requirement that the Indictment allege any explicit agreement between Markin and Wong. *United States v. Scott*, 979 F.3d 986, 990 (2d Cir. 2020) (noting the government "need not present evidence of a formal or express agreement," and may instead rely on proof the parties had a "tacit understanding to engage in the offense"). And although unnecessary to survive a motion to dismiss, the allegations in the Indictment amply set forth the agreement between Markin and Wong to trade based on material nonpublic information, including their agreement to share the information with friends and family (*id.* ¶ 18), their agreement to purchase luxury items for each other once they received their illegal profits (*id.* ¶ 14), their agreement to use the panda emoji as a code for Pandion (*id.* ¶ 15), and their agreed-upon cover story should law enforcement ask why they bought Pandion shares (*id.* ¶ 21). These allegations amply set forth the defendant's agreement with Wong to commit securities and tender offer fraud.

The defendant next argues that the Indictment must be dismissed because it fails to expressly allege that Wong agreed to provide Markin with a personal benefit in exchange for his decision to impart the material nonpublic information. (*See* Def. Mot. at 3-4). As an initial matter once again, there is no requirement that an Indictment set forth any factual detail of this sort. But the defendant is also wrong about what is required to prove insider trading: no such allegation that "that Wong agreed to provide Markin with a personal benefit in exchange for his decision to impart the material non-public information" (Def. Mot. at 3) is necessary, either in an Indictment or as proof at trial. Instead, to prove the Title 15 securities fraud object of Count One, the Government

8

need only prove that Markin (1) owed a duty of trust and confidence to a source of information; (2) violated that duty of trust and confidence by taking material nonpublic information from the source to trade securities, or by disclosing material non-public information to another person that the defendant expected would use the information to trade and did in fact trade securities; and (3) in using or providing this information, the defendant *expected to receive a personal benefit*.  *See United States v. Chow*, 993 F.3d 125, 135 (2d Cir. 2021) (emphasis added); Jury Charge, *United States v. Lavidas*, No. 19 Cr. 716 (DLC) (Jan. 14, 2020); Jury Charge, *United States v. Pinto-Thomas*, No. 15 Cr. 579 (JSR) (Apr. 16, 2019).

A personal benefit or advantage for the disclosure of confidential information includes the "tipper's intention to benefit the particular recipient" and "a gift of confidential information to a trading relative or friend" where "[t]he tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient." *United States v. Martoma*, 894 F.3d 64, 74 (2d Cir. 2017).  "[A] jury could infer a personal benefit from the fact that a tipper hoped to curry favor with his boss," "from the fact that another tipper and the tippee were friends from college," "where the tippee gave one tipper an iPhone, live lobsters, a gift card, and a jar of honey," or "where there is evidence that the tipper intended to benefit the recipient." *Id.* (citations and quotation marks omitted).  Here, the Indictment alleges that Markin received several tangible and intangible personal benefits from his disclosure of confidential information.  First, he and Wong, his personal friend, directly benefitted by together purchasing more than 35,000 shares of Pandion stock and profiting from those purchases. (Ind. ¶ 19). Second, Markin benefited family, close friends, and acquaintances who in total purchased more than 26,000 shares of Pandion stock. (*Id.*) Third, he received gifts and money from tippees, including gifts he and Wong specifically discussed *before* Wong made additional shares of Pandion stock and before the acquisition was made public.  (*Id.*

¶ 14 ("Markin countered that he wanted a Rolex watch.")).  Though there is no requirement that

the Indictment include any such factual allegations, these allegations amply set forth the basis upon

which Markin expected to receive a personal benefit in exchange for his disclosure of material

nonpublic information to Wong.  Accordingly, the defendant's motion to dismiss Count One fails.

## II.    The Defendant's Motion to Preclude the Government from Offering Co-Conspirator Statements "Subject to Connection" Should Be Denied.

The defendant argues that the Court should require the Government "to offer evidence at

trial demonstrating that it would satisfy the foundational requirements of the co-conspirator

exception prior to the introduction of alleged co-conspirator declarations," and prevent the

Government from offering such evidence subject to later connection demonstrating that the

statements were made during and in the furtherance of a conspiracy.[3]  (Def. Mot. at 9).  There is

no factual basis for this request, which is premature in any event.

As an initial matter, the defendant relies in support of his request on the claim that "excerpts

of interviews" previously produced by the Government do not include sufficient evidence to

establish a conspiracy.  (Def. Mot. at 7).  This assertion, even if true, is wholly irrelevant.  The

material that the defendant points to was produced by the Government consistent with its *Brady*

---

[3] Without pointing to any legal basis for the request, the heading to the defendant's motion also includes a request for a list of co-conspirators.  (Def. Mot. at 7).  This motion should likewise be denied as premature; the Government will identify its witnesses in advance of trial.  *See United States v. Fruchter*, 104 F. Supp. 2d 289, 313 (S.D.N.Y. 2000) (denying "Defendants' request for names of all aiders, abettors, unindicted co-conspirators, and confidential informants" as "nothing more than a request for a witness list").  To the extent the subheading on page 8 of the defendant's motion can be construed as a motion to preclude all co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E), that motion should be denied as premature.  The Government will satisfy *Bourjaily v. United States*, 483 U.S. 171 (1987) if and when it seeks to do introduce co-conspirator statements pursuant to that rule, which requires only that such statements be made during and in furtherance of a conspiracy, but it need not be the conspiracy charged or confined to the time period of the charged conspiracy.  *See United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994).

obligations as potentially exculpatory, and the Government has not yet produced material pursuant to 18 U.S.C. § 3500.  Of course, it is the *inculpatory* evidence that the Government will present at trial that will demonstrate the existence of the charged conspiracy.

Nor are the circumstances that gave rise to the decision in *United States v. Saneaux*, 365 F. Supp. 3d 493 (S.D.N.Y. 2005), on which the defendant relies (Def. Mot. at 9), present here.  In that case, an alleged co-conspirator was recorded by an informant and law enforcement agent, and then, in the course of cooperating with the Government, provided information suggesting that the recorded conversations were not undertaken in furtherance of a conspiracy.  *Saneux*, 365 F. Supp. 3d at 496, 501-03.  In those specific circumstances, Judge Haight required additional proof of the conspiracy and that the statements were made in furtherance prior to admitting the recordings.  *Id.* at 503-04.  There are no such unusual circumstances presented here.

 In any event, it is notable that the decision in *Saneaux* was made on a motion *in limine*. *Id.* at 495.  At this stage of the case, where no trial date has yet been set, the Government has not determined what if any evidence it will seek to offer at trial pursuant to Rule 801(d)(2)(E), nor has the Government produced 3500 material or identified exhibits.  For this reason, any motion to preclude evidence or seek any particularly evidentiary process is premature.  The Government will identify the statements it seeks to introduce pursuant to Rule 801(d)(2)(E) in advance of trial and the defendant may seek to preclude them at an appropriate time.  For this reason, the defendant's motion to preclude co-conspirator statements and/or to produce a list of co-conspirators should be denied as premature.

## II.    The Defendant's Request for Brady Material Should Be Denied as Moot.

The defendant seeks production of all *Brady* material, including "all statements made by any alleged co-conspirator in which the declarant (1) denied knowledge that the Defendant was

11

the source of the information upon which he traded; (2) denied knowledge that the defendant was in possession of material non-public information; or (3) denied knowing the precise nature of the information underlying the recommendation." (Def. Mot. at 9-10).  The Government has already produced discovery material under Rule 16, and therefore any records responsive to this request have been produced. Further, the Government has reviewed notes or memoranda of witness statements in its possession and has produced such material that contains statements of the type the defendant now seeks, including the excerpts of interviews referenced in the defendant's motion.  (*See* Def. Mot. at 7).  Accordingly, the defendant's motion should be denied as moot.

## III.   The Defendant's Motion to Compel Additional Information about the Fingerprint Report and Exclude Relevant Expert Testimony Should be Denied as Premature and Moot.

The defendant requests that (1) the Court require the immediate production of four categories of additional information regarding the fingerprint report, and (2) the defendant's rights to preclude the Government's fingerprint expert be preserved.  The defendant's motion should be denied as moot and premature.  With respect to the defendant's requests for additional information regarding the fingerprint report, the defendant first posed questions to the Government regarding the fingerprint report in March 2023 and the Government promptly responded to the defendant's questions, including by informing the defendant of the pages in the binder examined for fingerprints by the FBI, the subset of those pages that contained the defendant's fingerprints, and the pages in the binder that were not examined by the FBI.  The Government further informed the defendant that, to the extent that redactions appear on pages containing his fingerprints, those redactions had been applied by the law firm at which the Law Firm Associate worked to protect the Law Firm client's attorney-client privilege and the Government was not in possession of unredacted pages.  Accordingly, to the extent the defendant's requests can now be construed as a

motion to compel the Government to produce unredacted pages from the binder, the defendant is seeking to compel the Government to produce something it does not have and therefore has no obligation to produce. *See, e.g.*, *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) ("Clearly the government cannot be required to produce that which it does not control and never possessed or inspected." (quoting *United States v. Canniff*, 521 F.2d 565, 573 (2d Cir. 1975))).

Moreover, to the extent the defendant seeks information on which pages of the binder were examined for fingerprints and which pages contained the defendant's, that information has either already been provided to the defendant, or has not been requested by the defendant prior to the filing of his motion. Federal Rule of Criminal Procedure 16(a)(1)(G) provides for detailed expert disclosures "at the defendant's request" and at a time "sufficiently before trial to provide a fair opportunity for the defendant to meet the Government's evidence." Fed. R. Crim. Pro. 16(a)(1)(G). The Government is of course prepared to confer with the defendant on his request for additional information, and to propose a schedule for expert disclosures in advance of trial. But in this case, where there is no trial date, the defendant has not requested from the Government certain information he now seeks to compel, and where the parties have not conferred on a pretrial expert disclosure schedule, the defendant's motion to compel production of materials either already provided or fairly covered by Rule 16(a)(1)(G) should be denied as premature and moot.

## IV.   Markin's Motion to Dismiss for Lack of Venue as to Count Thirty-One Should Be Denied.

Markin argues that Count Thirty-One, which charges him with making materially false statements during an interview with the FBI on November 18, 2021, in violation of 18 U.S.C. § 1001(a)(2), should be dismissed for lack of venue because the statements that form the basis for Count Thirty-One were made in the Eastern District of Virginia and not the Southern District of New York. (Dkt. 54 at 11). Markin is wrong.

At trial, the Government must prove that venue is proper in this District by a preponderance of evidence. *See United States v. Naranjo*, 14 F.3d 145, 146 (2d Cir. 1994). Where venue is challenged on a pre-trial motion to dismiss, the government's burden is limited to showing that the indictment alleges facts sufficient to support venue. Fed. R. Crim. P. 12(b)(3)(A)(i); *see United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005); *United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010). Indeed, "as long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied." *United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006); *see also United States v. Milton*, No. 21 Cr. 478 (ER), 2021 WL 5304328, at *3 (S.D.N.Y. Nov. 15, 2021). "The question of whether there is sufficient evidence to support venue is appropriately left for trial." *Ohle*, 678 F. Supp. 2d at 231.

First, the Indictment alleges venue in the Southern District of New York. Specifically, it contains the allegation that the defendant made the relevant false statements "in the Southern District of New York and elsewhere." (Ind. ¶ 37). This allegation alone is sufficient to survive a motion to dismiss and call for a trial on the merits. *Milton*, No. 21 Cr. 478 (ER), 2021 WL 5304328, at *3; *Stein*, 429 F. Supp. 2d at 643.

Second, the Second Circuit and courts in this District have long held that venue is properly established in a false statements case charging a violation of 18 U.S.C. § 1001 in the district where the false statement has impact. *See United States v. Coplan*, 703 F.3d 46, 79 (2d Cir. 2012) (venue is appropriate in district where false statement has impact because of materiality requirement of Section 1001); *United States v. Ramirez*, 420 F.3d 134, 143 (2d Cir. 2005) (venue for a Section 1001 prosecution lay in the Southern District of New York where statements made in New Jersey were transmitted to Manhattan); *United States v. Wilson*, No. 10 Cr. 629 (VLB) (S.D.N.Y. July 2011) (charging jury that "venue is appropriate in jurisdictions in which the false statement was

14

made or in which it was received and acted upon by the federal government."), *aff'd*, 512 F. App'x 75, 78 (2d Cir. 2013).

For example, in *Coplan*, the defendant argued that venue on a false-statements charge when his statements were made and received during an Internal Revenue Service deposition in Nashville, Tennessee was improper in the Southern District of New York.  703 F.3d at 78.  The Second Circuit disagreed.  *Id.*  It began by identifying the elements of 18 U.S.C. § 1001(a)(2): "[I]n order to secure a conviction under § 1001(a)(2), the Government must prove that a defendant (1) knowingly and willfully, (2) made a *materially* false, fictitious, or fraudulent statement, (3) in relation to a matter within the jurisdiction of a department or agency of the United States, [and] (4) with knowledge that it was false or fictitious or fraudulent."  *Id.* (emphasis in *Coplan*).  The Circuit held that the materiality requirement "proves dispositive with respect to venue."  *Id.*  That is because "[u]nder § 1001, a statement is material if it has a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical matter."  *Id.* (citing *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012)).

Accordingly, whether the defendant's false statements were material turned on "the tendency or capacity of those statements to influence the decisionmaking body at issue" which, in *Coplan*, was the IRS.  *Id.*  Because proof of that materiality required evidence that the statements "were conveyed to or had an effect on the IRS investigators working in the Southern District of New York," venue was proper in the Southern District of New York.  *Id.* (citing *United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004) ("When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt."); *United States v. Ringer*, 300 F.3d 788, 792 (7th

Cir. 2002) (finding venue in the district where the investigation was "reasonably likely to be affected by [the defendant's] statements")).

Even if, as the Government expects the evidence will show, Markin made the false statements at issue during an FBI interview in Quantico, Virginia, "it does not follow that the crime then terminated, and that what transpired in Manhattan was irrelevant for venue purposes." *Id.* (quoting *United States v. Candella*, 487 F.2d 1223, 1228 (2d Cir. 1974)).  Thus, even if the offense began in Quantico, Virginia, as alleged in the Indictment, the offense continued to the Southern District of New York, where the report of Markin's statements to the FBI were reviewed and discussed by FBI agents and the United States Attorney's Office in connection with the ongoing investigation into Markin's securities fraud and tender offer fraud activity.  *See id.* (offense began in Tennessee, whether the defendant made the false statements to IRS officials, but continued into the Southern District of New York, where his deposition transcript was reviewed and discussed by IRS officials in connection with an ongoing audit).[4]  There is therefore no basis to challenge venue at this stage.

The sole case cited by Markin in seeking to dismiss Count Thirty-One for lack of venue, *United States v. Bin Laden*, is inapposite and predates binding Second Circuit's precedent in *United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005).  In *Ramirez*, the defendant filed false statements with the New Jersey Department of Labor as part of an effort to fraudulently obtain

---

[4] The Government expects the evidence at trial would establish that the two agents who participated in the interview prepared a report of the defendant's statements that was transmitted to prosecutors and FBI agents who considered those statements in the Southern District of New York and in the course of the grand jury investigation being conducted in the Southern District of New York.  In addition, the defendant was expressly advised that the interview was in connection with a criminal investigation being conducted by the United States Attorney's Office for the Southern District of New York and the FBI's New York Field Office.  *See* Dkt. 44, Ex. C and Ex. E.

immigration visas.  420 F.3d at 142-43.  Those documents were forwarded to the United States Department of Labor in Manhattan, where the prosecution was brought.  *Id.* at 142.  Applying its decision in *Candella*, the Second Circuit found venue proper in the Southern District of New York. *Id.*  The Second Circuit held that "[a]lthough enough was done in the Eastern District [of New York] to constitute a crime there . . . it does not follow that the crime then terminated, and that what transpired in Manhattan was irrelevant for venue purposes." *Id.* (qutoing *Candella*, 487 F.2d at 1228).  Thus, venue was properly laid in the Southern District of New York because the defendant's "statements continued to be false and continued to be within the jurisdiction of the United States" when they finally reached Manhattan.  *Id.* at 143 (quoting *Candella*, 487 F.2d at 1228).  Likewise, here, and consistent with the allegations in the Indictment (*see* Ind. ¶ 23) and as the Government expects to prove at trial, venue is properly laid in the Southern District of New York because Markin's statements continued to be false and continued to be within the jurisdiction of the United States when they finally reached Manhattan.

By contrast, in *Bin Laden*, which predated the Second Circuit's decision in *Ramirez*, the district court held that, although the crime of making false statements can be considered a continuing offense under 18 U.S.C. § 3237 when there exists a "geographic discontinuity between the defendant's physical *making* of the disputed statement, whether oral or written, and the actual *receipt* of that statement by the relevant federal authority."  *United States v. Bin Laden*, 146 F. Supp. 2d 373, 376 (S.D.N.Y. 2001) (emphasis in *Bin Laden*).  But at least one district court has stated that "the district court in *Bin Laden* might have ruled differently" in light of *Ramirez*, and that the absence of a "transfer" between a receiving agency in one district and the prosecuting attorneys in the Southern District of New York "need not undermine an application of the continuing offense doctrine."  *United States v. Mahaffy*, No. 05 Cr. 613, 2006 WL 2224518, at *9

(E.D.N.Y. Aug. 2, 2006) (venue properly laid in Eastern District of New York over false statements made in the Southern District of New York).

Of course, critically, *Bin Laden* is wholly irrelevant here for the simple reason that that decision concerned whether the government had proven venue by a preponderance of the evidence and was based on a full trial record.  146 F. Supp. at 375-80.  In short, the Indictment alleges that the offense charged in Count Thirty-One occurred in the Southern District of New York.  Nothing more is required.

## V.  Markin's Motion to Sever Should Be Denied.

As an alternative to dismissal, Markin moves, pursuant to Federal Rule of Criminal Procedure 14(a), to sever Count Thirty-One, arguing that a limiting instruction would not be able to "confine the impact of the statement."  (Dkt. 54 at 12).  The Court should reject this motion, too.

### A.  Applicable Law

Rule 8(a) of the Federal Rule of Criminal Procedure provides:

> Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

The Second Circuit has interpreted Rule 8(a) as providing a liberal standard for joinder of offenses.  *See United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988). "'Similar' charges include those that are 'somewhat alike,' or those 'having a general likeness' to each other." *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) (quoting *United States v. Werner*, 620 F.2d 922, 926 (2d Cir.1980)).  Courts also have found joinder proper for distinct criminal acts where they originated from a common scheme.  *Werner*, 620 F.2d at 927 (citing *United States v. Rabbitt*,

18

583 F.2d 1014, 1021 (8th Cir. 1978)).  Important policy considerations "of trial convenience and economy of judicial and prosecutorial resources" also support Rule 8(a) joinders. *Werner*, 620 F.2d at 928.  Moreover, "'[j]oinder is proper where the same evidence may be used to prove each count,'" *United States v. Page*, 657 F.3d 126, 130 (2d Cir. 2011) (quoting *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991)), or if "the counts have a 'sufficient logical connection,'" *id.* (quoting *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990)).

Rule 14 of the Federal Rules of Criminal Procedure provides that where joinder "appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Prejudice under Rule 14 must be viewed through the lens of Rule 8's embedded policy determination that interests of judicial economy and efficiency outweigh certain potential prejudices against defendants. *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987); *Turoff*, 853 F.2d at 1042.  "Given the balance struck by Rule 8, which authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice."  *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks and citation omitted).  Indeed, the Supreme Court has counseled that a district court should grant severance under Rule 14 only if there is a "'serious risk'" that a joint trial would compromise a "'specific trial right'" or "'prevent the jury from making a reliable judgment about guilt or innocence.'"  *United States v. Gracesqui*, No. 10 Cr. 74 (PKC), 2015 WL 5231168, at *4 (S.D.N.Y. Sept. 8, 2015), aff'd, 730 F. App'x 25 (2d Cir. 2018) (denying motion for severance of counts under Rule 14(a) and quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

19

Moreover, Rule 14 "'leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.'" *Page*, 657 F.3d at 130 (quoting *Zafiro*, 506 U.S. at 539). "[L]ess drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice and permit joinder." *Id.* (internal quotation marks and citation omitted). Thus, the "principles that guide the district court's consideration of a motion for severance usually counsel denial." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993).

### B.    Discussion

Count Thirty-One is properly joined with the other counts in the Indictment because they are either (a) of the same or similar character, (b) based on the same act or transaction, or (c) connected with or constitute parts of a common scheme or plan.  Fed. R. Crim. P. 8(a).  Markin has not made a sufficient showing of prejudice to warrant severance under Rule 14, particularly where, as here, evidence as to Count Thirty-One would be admissible at a trial on the other charges as direct evidence of the insider trading scheme with which Markin is charged.

*First*, the offense conduct charged in Count Thirty-One is directly related to and intertwined with the securities fraud and tender offer fraud charges in the Indictment.  As described in more detail in the Government's opposition to Markin's initial pretrial motions, all of the charges in the Indictment stem from Markin's participation in the scheme to trade in Pandion stock based on inside information that he misappropriated from his then-girlfriend.  (*See* Dkt. 51 at 1-3).  Evidence of Markin's participation in the scheme includes evidence of steps taken by Markin to conceal the scheme, including Markin's use of an encrypted messaging application, deletion of text messages, creation of a cover story to provide to law enforcement, and Markin's lies to the FBI agents when he was interviewed on November 18, 2021.  (*See* Ind. ¶¶ 21, 23).

20

*Second*, severance would be improper where, as here, Markin has not made a sufficient showing of prejudice.  Markin argues that trying Count Thirty-One with the securities and tender offer fraud charges in the Indictment would be prejudicial, without describing *how* it would be so. But the Second Circuit has long held that generalized concerns about potential prejudice resulting from being charged with multiple counts are insufficient to warrant severance.  Indeed, to permit severance on those grounds alone would effectively "read [Rule 8] from the books."  *Werner*, 620 F.2d at 929. "Granting separate trials under Rule 14 simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one, would reject the balance struck in Rule 8(a), since this type of 'prejudice' will exist in any Rule 8(a) case." *Id.*

*Third*, Markin concedes, as he must, that his false statements during the November 18 interview are admissible regardless of whether they are protected under *Garrity*.  (*See* Dkt. 54 at 11 (conceding admissibility of false statements)).  That is true, and makes them equally admissible in the trial against Markin on the securities and tender offer fraud charges in the Indictment. Markin's false statements are direct evidence of the securities and tender offer fraud charges, because they demonstrate his consciousness of guilt with respect to the securities fraud and tender offer fraud charges, and provide probative evidence of his knowledge, intent, and state of mind with respect to those charges.  Likewise, evidence of the securities and tender offer fraud counts would be admissible in a trial on Count Thirty-One because evidence of the securities and tender offer fraud scheme would be relevant and even necessary to proving the false-statements charge: Markin adhered to the fake cover story he and Wong had concocted, and falsely told the agents (i) that he learned about Pandion on StockTwits, (ii) that he purchased the stock because of a recent earnings report and a new board member addition, and (iii) that he did not know that his former girlfriend worked on the Pandion transaction.  (Ind. ¶ 23).

Indeed, joinder of false statements charges with fraud charges is proper when the conduct is related and the evidence is so intertwined. *See, e.g.*, *United States v. Ferrarini*, 9 F. Supp. 2d 284, 292 (S.D.N.Y. 1998) (false statements counts properly joined with securities fraud, wire fraud, insurance fraud, and other offenses where the charges were "not unrelated to the activities at the heart of the conspiracy, but stem directly from the defendants' efforts to cover up those activities," evidence of the fraudulent scheme would be necessary in a trial on the false statements charges, and evidence of the false statements would be admissible at a trial on the fraud charges).

*Finally*, here, Markin cannot demonstrate that he would suffer substantial prejudice from the charges being tried together, the evidence demonstrates that the charges are related, and evidence of Count Thirty-One and the securities and tender offer fraud charges are similar and will overlap. These similarities are more than sufficient to meet Rule 8(a)'s "liberal standard for joinder." *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977). Moreover, limiting instructions where appropriate will suffice to ensure that the jury considers the evidence and the charges against Markin separately. *Zafiro*, 506 U.S. at 539.

## CONCLUSION

For the foregoing reasons, the defendant's pretrial motions should be denied.

Dated: New York, New York
      July 21, 2023

                        Respectfully submitted,

                        DAMIAN WILLIAMS
                        United States Attorney

            By: _____/s/_____
                        Kiersten A. Fletcher
                        Nicolas Roos
                        Negar Tekeei
                        Assistant United States Attorneys