UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,                    Indictment No.: 22 CR 395 (ER)

      v.

SETH MARKIN,

          Defendant.

------------------------------------------------------------------X

# REPLY TO GOVERNMENT'S SENTENCING SUBMISSION AND IN FURTHER SUPPORT OF SETH MARKIN'S MEMORANDUM IN AID OF SENTENCING

SERCARZ & RIOPELLE, LLP
950 Third Avenue, 31st Floor
New York, New York 10022
Telephone: 1-212-586-4900
*Attorneys for Seth Markin*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. THE GOVERNMENT'S ARGUMENTS DO NOT SUPPORT THE IMPOSITION OF THE REQUESTED SENTENCE ....................................................................................... 2

    A. The Plea Allocution Was Not An Attempt By The Defendant To Minimize His Conduct ................................................................................................................... 2

    B. The Government's Fingerprint Evidence Does Not Establish That He Examined The Associate's Work Documents On Multiple Occasions ..................................... 6

    C. The Evidence Does Not Support The Contention That The Defendant Intended To Engage In A Continuing Course Of Conduct ......................................................... 7

    D. The Government's Continued Reliance On A "Tipper Pyramid" Ignores The Requirement That Mere Proximity To The Source Of The Information May Not Provide The Exclusive, Or Even The Primary, Basis For Imposing Sentence ........ 8

    E. A Guidelines Sentence In This Case, Will Result In An Unwarranted Sentencing Disparity ................................................................................................................... 9

III. CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

Cases

*United States v. Ferrarini,* 219 F.3d 145, 154 (2d Cir. 2000) ........................................................ 4

Statutes

18 U.S.C. § 3553(a) ............................................................................................................. 1, 10

18 U.S.C. § 3553(a)(1) ............................................................................................................ 1

## I.  INTRODUCTION

18 U.S.C. § 3553(a)(1) states that the Court, in determining the particular sentence to be imposed, shall consider both "(1) the nature and circumstances of the offense and the history and characteristics of the defendant."

Yet, the Government is silent on the subject of the Defendant's personal history and circumstances.  The Government does not challenge our description of the events that took place in the immediate aftermath of the Defendant's interview by FBI agents.  And, the Government does not dispute our narrative of the Defendant's ongoing efforts to overcome the adversity resulting from his separation from his chosen career, his arrest, and his Indictment in this case.

Instead, the Government places total reliance upon those portions of the Presentence Report ("PSR") which deal with the nature of the offense.  This account is drawn, in significant part, from the Government's interviews with the Law Office Associate and the co-defendants. It amounts to an overview of the conduct both of Mr. Markin and his co-defendant, Brandon Wong.  Yet, when defense counsel, in his initial Memorandum, provides information regarding the Associate's pattern of carelessness in dealing with material non-public information entrusted to her care; and, contrasts the manner in which the Defendant conducted his own trading activity with that of Mr. Wong, the Government suggests that he is attempting to "minimize" the Defendant's conduct and to "cast aspersions on others."  (Gov't Sentencing Submission at p. 17).

To the contrary, our focus is solely upon the sentencing of Mr. Markin. And, in determining the appropriate sentence, it is the duty of this Court to provide a sentence that is "sufficient, but not greater than necessary," to meet the sentencing goals of 18 U.S.C. § 3553(a) with regard to Mr. Markin, alone.

1

In what follows, we will treat the contentions raised by the Government in its submission for the purpose of demonstrating that the Defendant's conduct was, indeed, aberrational and opportunistic; and, that a sentencing well below the Guidelines range will more than meet the requirements of the sentencing statutes.

## II. THE GOVERNMENT'S ARGUMENTS DO NOT SUPPORT THE IMPOSITION OF THE REQUESTED SENTENCE

The Probation Department recommends a sentence of 15 months for this Defendant in the PSR based, no doubt in large measure, upon his personal history and circumstances. This is a less severe sentence than the one recommended by the Probation Department for the co-defendant, Brandon Wong. The Government, however, points to a series of factors which, it suggests, together warrants a sentencing of more than double the sentence recommended by the Probation Department. None of the alleged aggravating circumstances warrant the sentence sought by the Government. The Government's contentions shall be dealt with, in turn.

**A. The Plea Allocution Was Not An Attempt By The Defendant To Minimize His Conduct**

The Government suggests that the Defendant's Plea Allocution was an effort to minimize his conduct. For this reason, it is useful to examine the Plea Allocution in its entirety:[1]

> In January of 2021, I was involved in a personal relationship with ▓▓▓▓▓▓▓, an associate in the D.C. office of Covington & Burling. Through the pandemic, we sheltered in her apartment during this period. In late January, ▓▓▓▓▓▓▓ was assigned by the firm to work on a matter in which the pharmaceutical company, Merck, made an offer to acquire a startup company, Pandion Therapeutics.
>
> On or about January 31st, 2021, ▓▓▓▓▓▓▓ received a print job from the firm, including binders and documents. ▓▓▓▓▓▓▓ asked me to help her take the material out of the boxes so that she could organize it on her shelves.

---

[1] The name of the Law Office Associate has been redacted.

> One of the binders was open to a document. I read the document and noticed that it related to the proposed acquisition, and the ticker symbol for the company to be acquired was PAND.
>
> I researched the company and learned that it had recently conducted a successful clinical trial of a new drug to treat the symptoms of lupus. My research also revealed that the company was attracting stock purchases by hedge funds and individuals I regarded as insiders.
>
> Based upon all this information, I invested in the stock of the company.
>
> Over the next four weeks, ▮▮▮▮▮▮ would periodically engage me in otherwise innocuous conversation about her workload. The information I obtained from these conversations, when taken together with the information I had already obtained, led me to believe that the proposal was accepted, and the public announcement of the merger would soon take place.
>
> During this period, I continued to invest in the stock of Pandion and advised others, including family members, to invest as well.
>
> I recognize that my decision to invest in Pandion was based, at least in part, on material nonpublic information, including (a) the fact that Merck had retained counsel to conduct negotiations involving Merck's proposal to acquire Pandion Therapeutics; (b) the fact that negotiations were taking place; and, eventually, (c) the fact that the public announcement of the acquisition was scheduled.
>
> Among those with whom I discussed investing in the stock of Pandion were individuals who asked me whether I was in possession of insider information. I deliberately avoided answering their questions. And while I have family members and friends who are attorneys, I chose not to seek their advice on whether my conduct was illegal.
>
> I knew that my behavior was wrong, and I apologize to all of those who were involved.

(Transcript of Markin Plea 12/4/2023 at pp. 20-22).

Thus, the Defendant's Allocution contains both a statement that his decision to invest was based, in significant part, on material non-public information; and an acknowledgment that the Defendant knew that his behavior was wrong.

The Defendant stands by the representations he made in his Allocution as an accurate accounting of the conduct that resulted in his plea of guilty.

3

Had this case gone to trial, the Government would clearly have requested, and obtained, a jury instruction on Conscious Avoidance as the functional equivalent of the requisite knowledge in order to convict a defendant of a substantive count of Securities Fraud. Had the evidence conformed to the Plea Allocution, it would have permitted a properly instructed jury to convict the Defendant of Securities Fraud based <u>either</u> upon the theory that he knew that his conduct was "wrong" or upon the alternative theory that the Defendant intentionally avoided confirming the fact that his conduct breached a "relationship of trust and confidence" with the Associate, and involved imparting material non-public information to others. *See United States v. Ferrarini,* 219 F.3d 145, 154 (2d Cir. 2000).[2]

As explained in our initial sentencing submission, the evidence that much of the material non-public information upon which he traded and tipped others was the product of the Associate's comments about her work, is material in two respects: First, it is important in the determination of whether the Defendant's behavior was opportunistic, and the product of "happenstance," as we contend; or, whether it is demonstrative of a calculated and ongoing plan to engage in criminal conduct. Second, it is material to the determination of the amount of punishment that ought to be required for this offender.

The Defendant's Memorandum in Aid of Sentencing provides, *inter alia*, substantial information regarding both communications between the Defendant and the law firm Associate regarding her employment activities; and, information that calls into question statements by the co-defendant provided to agents after they admonished him regarding the penalties for perjury.

---

[2] We are mindful that trading based upon material non-public information imparted by an individual during the course of a conversation can provide the basis for a conviction for Insider Trading just as the alleged misappropriation of confidential work documents can also provide the basis for a finding of guilt. That is why in our initial submission we indicated that we would not seek a *Fatico* hearing regarding the events that led to the receipt of the insider information.

This material was deliberately provided under seal so as <u>not</u> to cast aspersions on others; and it was provided to assist this Court in making a determination as to whether the Defendant's behavior can be categorized as "aberrational" and "opportunistic" or, as the Government suggests, as part of a more longstanding deliberate and ongoing scheme of misconduct.

It is important to note that the Defendant began his trading activity based upon the review of the contents of the open binder and the fruits of his ensuing research <u>before</u> Merck had even provided an offer to Pandion for the acquisition of the shares of this start-up company; let alone before the terms were agreed upon.  And, it is important to note that the Associate's admissions to investigators support the Defendant's contention that much of what he subsequently learned was imparted to him in conversations with the Associate that he neither initiated nor pursued; and, did not come from multiple instances of secretively examining her work documents.  In particular, there is a clear connection between the Associate's seemingly innocuous complaints to Markin about her workload on the merger project, including the last minute deadlines, and the Defendant's conversations with Wong regarding the delay in the public announcement of the merger that will mark the end of her involvement with this project.

Moreover, it is material that, while the Government vouched for Mr. Wong's claim that Markin viewed the material in the Associate's work documents "multiple times," his credibility is subject to material challenge based both upon his false statements to investigators during his initial interview, and the fact that he was, at the time of the events at issue, engaged in substantial additional criminal conduct.

In support of its claim that the Defendant's assertion of willful blindness does not apply, the Government points to Paragraph 20 of the PSR which suggests that Markin and Wong "contrived" a cover story, presumably in the event that they were interrogated by agents of law

5

enforcement. However, while Wong consistently questioned Markin about those sources in which he found reference to Pandion during his research – including Stocktwits – the defendants did not contrive a cover story. The best evidence of this is the disparate versions that each defendant provided when initially questioned by law enforcement.

While the Defendant's Plea Allocution contains a more nuanced explanation of his conduct and state of mind, we submit that it more accurately describes the Defendant's behavior throughout the limited period of approximately one month during which the Defendant misappropriated material non-public information that the Associate was tasked with safeguarding.

**B. The Government's Fingerprint Evidence Does Not Establish That He Examined The Associate's Work Documents On Multiple Occasions**

The Government argued that the Fingerprint evidence assembled by the FBI further demonstrates that the Defendant rifled through the Associate's work documents "multiple times." (*See* Gov't Sentencing Submission at p.10).

Annexed hereto as **Exhibit A** to this Reply is a copy of the Fingerprint Report which we obtained from the Government during pretrial discovery.[3] The Report demonstrates that the Defendant's fingerprints were found on the outside of a single binder and on three successive pages within the binder. The report does not reveal where on the pages the fingerprints were found. Nor does the report, or other evidence provided by the Government, reveal the content of what was on those pages. And, the evidence fails to show when the pages were enclosed within

---

[3] The portions of the binder in which the fingerprints were found was completely redacted by Covington & Burling to remove all content.

6

the binder. Thus, this evidence does nothing to demonstrate that the Defendant opened the binder and examined its contents on more than one occasion.

### C. The Evidence Does Not Support The Contention That The Defendant Intended To Engage In A Continuing Course Of Conduct

There is no question but that throughout the period of their joint trading activity, and in the aftermath of the public announcement of the merger, Wong and Markin engaged in a great deal of what can be described as locker room banter.[4] However, the fact remains that, apart from the instance that gave rise to this Indictment, Markin did not provide Mr. Wong with any material non-public information regarding the activities of other law firm clients. The Defendant refrained from doing so notwithstanding that he and the Associate shared living quarters in a cramped apartment and that, by the Associate's own admission, she made little effort to conceal the details of her work activity from the Defendant. Indeed, as the Government acknowledges, she went so far as to ask him, on at least one occasion, to proofread her work-related emails relating to another merger and acquisition project. (See Gov't Sentencing Submission at p. 9).

In light of the Government's insistence that the sole method by which the Defendant misappropriated confidential information was by rummaging through her work documents on multiple occasions, it is important to note the following: Contrary to the suggestion in the Government's Sentencing Submission, (*see* Gov't Sentencing Submission at p. 10), it was Mr. Wong, and not the Defendant who commented that Markin ought to "get her drunk" in order to obtain additional information that could be used to further unlawful trading activity. (Annexed

---

[4] Their conversation extended to such fanciful dialogue as whether the two of them should "get married," and multiple conversations on the subject of how to spend their stock earnings. The Defendant acknowledges that Wong exhorted him, on more than one occasion to seek additional insider information upon which to base trading activity. And, Markin, to his ongoing distress, never flatly refused to do so. Instead, he either egged Wong on or maintained his silence.

7

hereto as **Exhibit B** is the text message containing this reference).  Moreover, Mr. Wong did not suggest that Markin find a way to get the Associate out of the apartment, or take other steps to access her work documents.  His use of the term "get her drunk" is a clear indication that in their conversations regarding Pandion, Markin had previously told Wong that he obtained the information regarding Pandion from comments made by the Associate when she may have been under the influence of alcohol; rather than by making repeated trips to her binders.

**D.  The Government's Continued Reliance On A "Tipper Pyramid" Ignores The Requirement That Mere Proximity To The Source Of The Information May Not Provide The Exclusive, Or Even The Primary, Basis For Imposing Sentence**

As indicated throughout our initial submission, and this one, reliance upon a single factor in support of a particular sentence flies in the face of the requirements of 18 U.S.C. § 3553(a).

In response, the Government states:

> But while the pyramid may not represent all of the aspects of the Defendant's life, it does accurately convey an important point: he was the single source of the misappropriated inside information, and he was sole tipper that triggered several tipping chains.

(Gov't Sentencing Submission at p. 14).

We do not dispute that the Defendant was the "but for" cause of the insider trading ascribed to him in the Indictment.  It would be equally true that the bank teller who fails to demand an 8300 form from a client who deposits large sums of cash is the "but for" cause of the myriad of financial crimes that could be perpetrated with the funds.  Yet, no court would sentence the bank teller without a thorough examination of the basis upon which he may have joined the conspiracy to commit those crimes, the level of his knowledge of what was to take place; and, most importantly, the history and circumstances of this individual that preceded his involvement with the activity at issue.

8

### E.  A Guidelines Sentence In This Case, Will Result In An Unwarranted Sentencing Disparity

In its effort to distinguish Mr. Markin from the other defendants, the Government points to five factors relating to his participation in the offense.  (*See* Gov't Sentencing Submission at pp. 13-17).  Four of these factors, relate in equal measure to the defendant Brandon Wong, they include the serious harm caused by the offense conduct, the fact that the Defendant tipped several individuals, the fact that the Defendant did not engage in merely a single instance of insider trading, and the fact that the Defendant repeatedly attempted to conceal his conduct to avoid criminal investigation.  The fifth factor – that the Defendant at issue expressed an interest in continuing to misappropriate material non-public information – applies to Mr. Wong, alone.

While the Government has also pointed to Wong's offer to "cooperate" and has vouched for the "truthful" nature of his proffer statements, the fact remains that Mr. Wong's account of what he was told by the Defendant was never subjected to the test of cross examination.  We submit that this one factor cannot justify the disparity between the five month sentence imposed upon Mr. Wong and the Guideline sentence currently sought by the Government against Mr. Markin.

In its effort to support a sentence within the 30-37 months range, the Government then contents itself with a list of other insider trading defendants, sentenced in this District, to terms of incarceration of two years or more. (*Id.* at p. 21). This comparison is more notable for what it omits than for what it includes.  It contains no mention of the underlying conduct that supported these sentences.  It contains no reference to the Guideline range that governed the sentences of these defendants.  And, it fails to include <u>any</u> description of the personal history and circumstances of these offenders.

9

Again, we submit that the more appropriate comparison lies between the sentence imposed upon Mr. Wong and the one that this Court will see fit to impose upon Mr. Markin.

### III. CONCLUSION

The Defendant stands before this Court genuinely remorseful over his inappropriate insider trading and tipping activity which represents a departure from an otherwise exemplary and law-abiding life.

The many character letters written on his behalf speak to his integrity, his selflessness, and his efforts to forge a new path in his life.

It is these factors that point most strongly toward the kind of lenient sentence has already meted out to the co-defendant whose conduct most closely resembles that of Mr. Markin himself.

For all the reasons set forth herein, and in our initial submission, we respectfully submit that a sentence of <u>no more than</u> the 5 month term imposed on Brandon Wong will be "sufficient but not greater than necessary" to meet all of the sentencing goals of 18 U.S.C. § 3553(a).

Dated: March 11, 2024
      New York, New York

      Respectfully submitted,

      SERCARZ AND RIOPELLE, LLP

      By: /s/ Maurice H. Sercarz
          950 Third Avenue, 31st Floor
          New York, New York 10019
          Telephone: (212) 586-4900
          Email: msercarz@sercarzandriopelle.com
          *Attorneys for Seth Markin*